*Modified.*

---

UNITED STATES *v.* GUTHMAN, SOLOMONS & Co. (No. 860).[1]

ARTICLES OF PERSONAL ADORNMENT, VALUE IN CHIEF OF BRASS.

Reviewing the legislative history of paragraph 448, tariff act of 1909, and its interpretations, the articles of the importation that are stipulated to be both commonly and commercially known as jewelry must be taken to come directly under the provisions of that paragraph and to be dutiable under it. They are not dutiable as manufactures of metal.—Hensel *v.* United States (3 Ct. Cust. Appls., 117; T. D. 32366).

United States Court of Customs Appeals, May 17, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7330 (T. D. 32281).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, on the brief), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* and *George J. Puckhafer* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal involves a construction of paragraph 448 of the tariff act of 1909.

---

[1] Reported in T. D. 32572 (22 Treas. Dec., 948).

It is an extensive and comprehensive paragraph, embracing therewithin for dutiable purposes five different classes of similar merchandise. There is, in addition, therewithin a provision levying a cumulative rate of duty upon certain of the classes of merchandise therein made dutiable. The paragraph is properly separable, accordingly, into six divisions.

1. "Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments, together with all other articles of every description, finished or partly finished,

a. if set with imitation precious stones composed of glass or paste (except imitation jet),

b. or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal,

c. whether *or not* enameled, washed, covered, plated or alloyed with gold, silver, or nickel,

d. *and designed to be worn on apparel or carried on or about or attached to the person,*

e. valued at twenty cents per dozen pieces, one cent each and in addition thereto three-fifths of one cent per dozen for each one cent the value exceeds twenty cents per dozen;"

2. "all stampings and materials of metal (except iron or steel), or of metal set with glass or paste, finished or partly finished, suitable for use in the manufacture of any of the foregoing articles (except chain valued at less than thirty cents per yard other than nickel or nickel-plated chain), valued at seventy-two cents per gross, three cents per dozen pieces and in addition thereto one-half of one cent per gross for each one cent the value exceeds seventy-two cents per gross;"

3. "rope, curb, cable, and other fancy patterns of chain, without bar, swivel, snap or ring, composed of rolled gold plate or of silver, German silver, white metal, or brass, not exceeding one-half of one inch in diameter, breadth or thickness, valued at thirty cents per yard, six cents per foot, and in addition thereto three-fifths of one cent per yard for each one cent the value exceeds thirty cents per yard;"

4. "finished or unfinished bags, purses and other articles, or parts thereof, made in chief value of metal mesh composed of silver, German silver, or white metal, valued at two dollars per dozen pieces, ten cents per piece and in addition thereto three-fifths of one cent per dozen pieces for each one cent the value exceeds two dollars per dozen;"

5. "all *the foregoing,* whether known as jewelry or otherwise and whether or not denominatively or otherwise provided for in any *other paragraph* of this act, twenty-five per centum ad valorem in addition to *the specific rate or rates of duty herein provided;*"

6. "all articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, sixty per centum ad valorem."

Some general considerations are pertinent. The legislative and administrative history of this paragraph in harmony with its internal evidences make very clear the congressional intent. The purpose was dual:

First, prompted by continuous endeavors to exclude from the classification as jewelry many articles so assessed for duty by customs officials, the Congress endeavored to enlarge the scope of that term so as to include everything, and parts thereof, either *commonly* or *commercially* known as jewelry. The language of the corresponding

paragraph of the tariff act of 1897 (434) as compared with that of the present act (448) and the vast number of cases arising under the previous act, many of which are cited in "Notes on Tariff Revision" at pages 591 and 592, conclusively establish this fact.

Secondly, the language of the first five provisions of paragraph 448 equally well indicate the congressional purpose to place upon certain classes of cheap, but not the cheapest, articles of personal adornment an unusually high duty of 85 per cent ad valorem. The precise and exact language of the law clearly indicates the purpose to confine this rate to those particular articles only within its words. The first provision of this paragraph is manifestly intended to levy duties upon ornaments for personal adornment of certain defined characteristics and uses. The predicated provision of descriptive scope thereof relates to "all other articles of every description, finished or partly finished." This provision, however, with the other subjects of the paragraph, is limited by the very language thereof that such articles must be (a) either "set with imitation precious stones," or (b) "composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal," and (d) in every case "designed to be worn on apparel or carried on or about or attached to the person," and (e) "valued at twenty cents per dozen pieces or over."

The office of the fifth provision of the paragraph seems to be not alone to levy a cumulative rate on the previously defined paragraph, but to avoid classification thereof under other paragraphs of the law. Nevertheless, it is not made competitive with the last provision of the paragraph. It is expressly, as before pointed out, so drawn not to compete with the latter.

This division of the paragraph is confined by its language in its application to those articles alone which are primarily within one of the preceding specific descriptions. It seems to be designed to reach out into all other paragraphs of the tariff act, denominative and descriptive, and withdraw therefrom and make in the first instance specifically primarily dutiable under the preceding provisions of this paragraph all articles within any one of the preceding descriptions, and to add duty thereto of 25 per cent ad valorem. Obviously it does not extend to the last provision of paragraph 448 in that by language it is expressly related to "the foregoing" designation of merchandise and its cumulative duty is added only "to the *specific* rate or rates of duty herein provided." The final paragraph is not of "the foregoing," is not an "*other* paragraph of this act," and does not levy "specific rate or rates" of duty.

The omission of the customary word "other" in such a relative provision of law so very precisely worded, in conjunction with the very broad language following, "commonly or commercially known,"

which, while broad in scope, is under all decisions from its wording regarded of first application in its inclusiveness when read in conjunction with the fifth provision of the paragraph, which expressly excepts, for the reasons stated, this last provision from its terms, the reasons multiply which compel the conclusion that it was the congressional purpose that the scope of this provision of the law was not to be contracted or invaded by any other provision of the act and everything "commonly or commercially known as jewelry" was to be so assessed thereunder regardless of every other provision of the law, and as if this stood alone, a complete act.

It seems to us the absence of the word "other" or words of similar import assigning to the last provision a scope beyond what precedes, the use of language of first importance known to customs legislation, "commonly *or* commercially known as jewelry," and the express limitation of the fifth provision of the paragraph to all *other paragraphs* of the act, all conduce to this conclusion.

Whether or not the language employed in this and the contrasted and competitive provisions of the paragraph and act has rendered effectual this purpose in all cases can not and should not be here decided.

We are not by this record called upon and do not decide, for example, if a certain cuff button otherwise within the first provision should be by the trade classed as jewelry that it would be dutiable under one or the other, the first or last, provisions of the paragraph. Issues presented by such conditions might be controlled by the record or law of the individual case. What is here said is confined to the records and issues in the appeals now before the court and in pertinent consideration of the scope of paragraph 448 as therein made issuable.

These articles, brooches, valued at less than 20 cents per dozen, are expressly excluded from all the preceding provisions of paragraph 448 but the last.

The principal question of construction arising in this case concerns the last provision, and is, Do the words therein "composed of gold or platinum" relate to the immediate antecedents "mesh bags and purses" alone, or are they referable back to the words "all articles" at the opening of this provision?

We think the history, logic, and rules of law attendant upon the provision, as it is here used by Congress, conduce conclusively to the conclusion that they are referable only to the immediate antecedents.

Historically, metal mesh bags classified as articles commonly known as jewelry under paragraph 434 of the tariff act of 1897 were by the United States Circuit Court for the Southern District of New York in the case of Tiffany *v.* United States (131 Fed. Rep., 398), held not dutiable under that paragraph because not commercially known as

jewelry, but as manufactures of metal. This case having been called to the attention of the Congress at the time of the enactment of the tariff act of 1909 undoubtedly prompted the specific provisions making metal mesh bags dutiable at the same rates as and under the same classifications with jewelry. Accordingly, and the occurrence of the two provisions in almost identical language in this paragraph adds strength to the conclusion, we find expressed provision for such herein.

In the fourth subdivision of paragraph 448, *supra*, we find a provision for "finished or unfinished bags, purses, and other articles, or parts thereof, made in chief value of metal mesh *composed of silver, German silver, white metal*," etc. `And in the last provision, and the one under consideration, a correlated provision for "chain, mesh, and mesh bags and purses *composed of gold or platinum* * * *."

The two provisions relate to metal mesh bags, and when read together and alternately indicate, we think, beyond any controversy the intention of the Congress to provide in these provisions for bags of metal mesh "composed of silver," etc., and "composed of gold or platinum" and for these alone and not other articles of that composition.

That the words "composed of silver" as they appear in the fourth provision of the paragraph are referable to the words "metal mesh" alone, and therefore confine the application of these words of limitation to metal mesh bags only was held by this court in Hensel *v.* United States (3 Ct. Cust. Appls., 117; T. D. 32366). We have no reason to change the views expressed in that case; on the contrary, this case serves to reinforce the conclusions therein reached.

We are of the opinion, therefore, that the words, "composed of gold or platinum," as used in the last provision of paragraph 448, are referable alone to the immediate antecedents, "mesh bags and purses," and are not referable to the earlier antecedents of the provision, "all articles."

In this case the merchandise is described as follows:

Articles of personal adornment composed in chief value of brass, valued at less than 20 cents per dozen pieces, assessed with duty by the collector at 60 per cent ad valorem under the last clause of paragraph 448 and claimed by the importers to be dutiable at 45 per cent ad valorem under paragraph 199.

It is stipulated by and between counsel for the importers and the United States that the articles are commonly *and* commercially known as jewelry, and are composed in chief value of brass.

For the purposes of this case we assume the stipulation to be true. This assumption of necessity involves articles of such flimsy character as have been previously declared by the courts to be neither commonly nor commercially known as jewelry. We find nothing in

this record, however, which warrants the court in making any other assumption or finding. The goods were so returned by the appraising officer, and, as stated, it is so stipulated by counsel.

Though being goods of personal adornment, to wit, a brooch, as disclosed by the record, and being in chief value of brass, but valued at less than 20 cents per dozen pieces, by reason of the last qualification they are not within the specific provisions of the first subdivision of paragraph 448. Not being within that subdivision of the paragraph, and obviously and admittedly not being within the specific provisions of subdivisions three and four thereof, they are not subject to the cumulative rates provided in subdivision five thereof.

The question arises, therefore, whether they are properly dutiable under paragraph 199 of the act as manufactures in chief value of metal, or under the last provision of paragraph 448 of the act as "all articles commonly *or* commercially known as jewelry," etc., *supra.*

Construing the words "composed of gold or platinum" in this provision as modifying "mesh bags and purses" only the scope thereof becomes apparent. The comprehensiveness of the provision is expressed by the words "all articles commonly or commercially known as jewelry." Each succeeding phrase, instead of narrowing, amplifies and extends the comprehensiveness of the initial phrase. It is immediately followed by the words "parts thereof," which is an extension, and then by the words "finished or unfinished," which constitute another extension, and then by the words, "including chain, mesh, and mesh bags and purses composed of gold or platinum," which is a further extension, and then by the concluding phrases, each of which, whatever their antecedent reference, continue to expand the precedent words of the provision, to wit, "whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof," so that the narrowest amplitude of the entire provision is expressed in the comprehensive words "all articles commonly *or* commercially known as jewelry."

As the stipulation of the parties hereto is to the effect that this merchandise is both commonly *and* commercially known as jewelry it therefore stipulates this merchandise for dutiable purposes within the very words of the final provision of paragraph 448.

The one paragraph, 199, extending to all articles made wholly or in chief value of metal not specially provided for, and the other, 448, being a provision for only those articles wholly or in part of metal known as jewelry, the latter is plainly the more specific.

In this case, therefore, the decision of the Board of General Appraisers holding that such articles are properly dutiable under paragraph 199 as manufactures of metal is *reversed.*