COHN & ROSENBERGER v. UNITED STATES (No. 1100). UNITED STATES
v. COHN & ROSENBERGER (No. 1108). UNITED STATES v. CLAFLIN
Co. *et al.* (No. 1109). GUTHMAN, SOLOMONS & Co. *et al.* v. UNITED
STATES (No. 1110).[1]

ARTICLES COMMONLY OR COMMERCIALLY KNOWN AS JEWELRY.

Avoiding a construction that would work inconsistent or absurd results, but not
on that ground alone, it is held that in paragraph 448, tariff act of 1909, where
jewelry is treated comprehensively, it was intended that to all articles commonly
or commercially known as jewelry the lower rate of 60 per cent ad valorem should
apply, notwithstanding the fact that such articles fall within the apparent *eo nomine*
provisions in a preceding part of the paragraph.—United States *v.* Guthman *et al.*
(3 Ct. Cust. Appls., 276; T. D. 32572).

United States Court of Customs Appeals, May 31, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7424 (T. D. 33142).

\Affirmed as to part, reversed as to part.]

*Hatch & Clute* (*Walter F. Welch* of counsel) and *Comstock & Washburn* for appellants.
*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant
attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

These cases were heard together by the Board of General Appraisers
and are so considered here.

In the board's opinion the merchandise was arranged in the fol-
lowing classes, the correctness of which is not questioned:

(1) Brooches; (2) hatpins, bar pins, chatelaine pins, scarf pins, veil pins, and col-
lar pins; (3) necklaces and necklets or lavallieres; (4) chains and neck chains; (5)
lockets; (6) crosses and earrings; (7) steel chains in imitation of gun metal.

The board held that part of the merchandise covered by class 7 to
be dutiable as a manufacture of metal under paragraph 199 of the
tariff act of 1909; that the part described in class 6 was dutiable at
60 per cent ad valorem under the last clause of paragraph 448 of
the same act; and there is no claim made here that the board erred
therein.

All the merchandise was assessed by the collector at rates equiva-
lent to 85 per cent ad valorem under the first part of said paragraph
448, which is hereinafter inserted.

The board adjudged that the merchandise described in its said
second, fourth, and fifth classes was dutiable at rates equivalent to
85 per cent ad valorem under the first part of paragraph 448, from
which judgment the importers appeal, and that so much thereof as
was found to be included within its said first and third classes was
dutiable at 60 per cent ad valorem under the last clause of the same
paragraph, from which judgment the Government appeals. The

---

board, however, found that some merchandise claimed to be within its class 1 belonged in class 2.

It is agreed by all parties here, and the board has found as a fact, that all the merchandise involved in these appeals is commonly and commercially known as jewelry, and it is assumed in argument that if the last clause of paragraph 448 does not apply thereto, it is, in view of the findings of the board, all dutiable under the first part thereof.

The paragraph we quote, but for convenience reproduce it subdivided as was done in United States *v.* Guthman *et al.* (3 Ct. Cust. Appls., 276; T. D. 32572), as follows:

1. Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments, together with all other articles of every description, finished or partly finished—

(*a*) If set with imitation precious stones composed of glass or paste (except imitation jet),

(*b*) *Or* composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal,

(*c*) Whether *or not* enameled, washed, covered, plated, or alloyed with gold, silver or nickel,

(*d*) *And designed to be worn on apparel or carried on or about or attached to the person,*

(*e*) Valued at twenty cents per dozen pieces, one cent each and in addition thereto three-fifths of one cent per dozen for each one cent the value exceeds twenty cents per dozen;

2. All stampings and materials of metal (except iron or steel), or of metal set with glass or paste, finished or partly finished, suitable for use in the manufacture of any of the foregoing articles (except chain valued at less than thirty cents per yard other than nickel or nickel-plated chain), valued at seventy-two cents per gross, three cents per dozen pieces and in addition thereto one-half of one cent per gross for each one cent the value exceeds seventy-two cents per gross;

3. Rope, curb, cable, and other fancy patterns of chain, without bar, swivel, snap or ring, composed of rolled-gold plate or of silver, German silver, white metal, or brass, not exceeding one-half of one inch in diameter, breadth or thickness, valued at thirty cents per yard, six cents per foot, and in addition thereto three-fifths of one cent per yard for each one cent the value exceeds thirty cents per yard.

4. Finished or unfinished bags, purses and other articles, or parts thereof, made in chief value of metal mesh composed of silver, German silver, or white metal, valued at two dollars per dozen pieces, ten cents per piece and in addition thereto three-fifths of one cent per dozen pieces for each one cent the value exceeds two dollars per dozen;

5. All *the foregoing,* whether known as jewelry or otherwise and whether or not denominatively or otherwise provided for in any *other paragraph* of this act, twenty-five per centum ad valorem in addition to *the specific rate or rates of duty herein provided;*

6. All articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, sixty per centum ad valorem.

In the Guthman case, *supra,* the merchandise was brooches, which were agreed to be within the class of merchandise described in the first part of the paragraph and also to be commonly and commercially known as jewelry. The following discussion of the paragraph

as relates to the merchandise then before this court is quoted as expressing our present views as to its meaning:

Some general considerations are pertinent. The legislative and administrative history of this paragraph in harmony with its internal evidences make very clear the congressional intent. The purpose was dual:

First. Prompted by continuous endeavors to exclude from the classification as jewelry many articles so assessed for duty by customs officials, the Congress endeavored to enlarge the scope of that term so as to include everything, and parts thereof, either *commonly* or *commercially* known as jewelry. The language of the corresponding paragraph of the tariff act of 1897 (434) as compared with that of the present act (448) and the vast number of cases arising under the previous act, many of which are cited in "Notes on Tariff Revision" at pages 591 and 592, conclusively establish this fact:

Secondly. The language of the first five provisions of paragraph 448 equally well indicate the congressional purpose to place upon certain classes of cheap, but not the cheapest, articles of personal adornment an unusually high duty of 85 per cent ad valorem. The precise and exact language of the law clearly indicates the purpose to confine this rate to those particular articles only within its words. The first provision of this paragraph is manifestly intended to levy duties upon ornaments for personal adornment of certain defined characteristics and uses. The predicated provision of descriptive scope thereof relates to "all·other articles of every description, finished or partly finished." This provision, however, with the other subjects of the paragraph, is limited by the very language thereof that such articles must be (a) either "set with imitation precious stones," or (b) "composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal," and (d) in every case "designed to be worn on apparel or carried on or about or attached to the person," and (e) "valued at twenty cents per dozen pieces or over."

The office of the fifth provision of the paragraph seems to be not alone to levy a cumulative rate on the previously defined paragraph, but to avoid classification thereof under other paragraphs of the law. Nevertheless, it is not made competitive with the last provision of the paragraph. It is expressly, as before pointed out, so drawn not to compete with the latter.

This division of the paragraph is confined by its language in its application to those articles alone which are primarily within one of the preceding specific descriptions. It seems to be designed to reach out into all other paragraphs of the tariff acts denominative and descriptive, and withdraw therefrom and make in the first instance specifically primarily dutiable under the preceding provisions of this paragraph all articles within any one of the preceding descriptions, and to add duty thereto of 25 per cent ad valorem. Obviously it does not extend to the last provision of paragraph 448 in that by language it is expressly related to "the foregoing" designation of merchandise and its cumulative duty is added only "to the *specific* rate or rates of duty herein provided." The final paragraph is not of "the foregoing," is not an "other paragraph of this act," and does not levy "specific rate or rates" of duty.

The omission of the customary word "other" in such a relative provision of law so very precisely worded, in conjunction with the very broad language following "commonly or commercially known," which, while broad in scope, is under all decisions from its wording regarded of first application in its inclusiveness when read in conjunction with the fifth provision of the paragraph, which expressly excepts, for the reasons stated, this last provision from its terms, the reasons multiply which compel the conclusion that it was the congressional purpose that the scope of this provision of the law was not to be contracted or invaded by any other provision of the act and everything "commonly or commercially known as jewelry" was to be so assessed thereunder regardless of every other provision of the law, and·as if this stood alone a complete act.

It seems to us the absence of the word "other," or words of similar import, assigning to the last provision a scope beyond what precedes, the use of language of first impor- tance known to customs legislation "commonly *or* commercially known as jewelry,'' and the express limitation of the fifth provision of the paragraph to all *other paragraphs* of the act, all conduce to this conclusion.

Whether or not the language employed in this and the contrasted and competitive provisions of the paragraph and act has rendered effectual this purpose in all cases can not and should not be here decided.

We are not by this record called upon and do not decide, for example, if a certain cuff button otherwise within the first provision should be by the trade classed as jewelry that it would be dutiable under one or the other, the first òr last provisions of the paragraph. Issues presented by such conditions might be controlled by the record or law of the individual case. What is here said is confined to the records and issues in the appeals now before the court, and in pertinent consideration of the scope of paragraph 448 as therein made issuable.

These articles, brooches, valued at less than 20 cents per dozen, are expressly excluded from all the preceding provisions of paragraph 448 but the last.

Comparing paragraph 199 of the same act with the last part of said paragraph 448, we said in United States *v.* Goldberg *et al.* (3 Ct. Cust. Appls., 282; T. D. 32573):

The two tariff designations "commonly" and "commercially" are manifestly aimed to include, first, that which is commercially known as jewelry; that is to say, that which the wholesale jewelry trade of this country generally and uniformly throughout the country in the wholesale trade thereof regards and classifies as jewelry; and, secondly, that which is commonly known as jewelry; that is to say, that which the general public in its everyday understanding and converse regards and classifies as jewelry. The provision extends the scope of the paragraph to everything which the commercial and popular understanding denominates and classifies as jewelry.

The one paragraph (199) extends to all articles made wholly or in chief value of metal not specially provided for, while the other (448) extends only to those articles wholly or in part of metal "known as jewelry." This latter is the more specific.

In Guthman *v.* United States (3' Ct. Cust. Appls., 286; T. D. 32574) and in Cohn *v.* United States (3 Ct. Cust. Appls., 288; T. D. 32575) the views expressed in the first Guthman case were in effect approved.

It is clear that these cases hold that all articles commonly or commercially known as jewelry and which are not *eo nomine* mentioned in the first subdivision of paragraph 448 are dutiable under the last subdivision thereof at the rate of 60 per cent ad valorem, and that the question, whether articles within the *eo nomine* provision of said first subdivision that are also commonly or commercially known as jewelry are likewise dutiable under the last subdivision, was left undecided. These cases require the determination of that question.

The rule invoked by the Government that an *eo nomine* description, other things being equal, must prevail in tariff statutes is sound and well founded upon both logic and precedent, but it is manifestly controlled by the higher rule, that if Congress has indicated in a given case its intent that such rule is not to apply, effect must be given to such intent, because the *eo nomine* rule itself is but one

means of discovering legislative intent which, if and when ascertained, must control.

It should however, be observed, when the application, force, and effect of this rule is considered, as it relates to this case, that the *eo nomine* provisions in subdivision 1 of the paragraph are not designed to fix the classification of merchandise coming within the same, because, although it *may* be *eo nomine* within subdivision 1, it *must*, to warrant its classification thereunder, also fall within *either a* or *b* and within *both d* and *e* of the subparagraphs of said subdivision. When this is realized and the arrangement, scope, and purpose of the whole paragraph is considered, what we have called the *eo nomine* provision loses much of its supposed force because it is the ultimate fact that the articles *must* be within *both* subparagraphs *d* and *e* and *either a* or *b* and not their so-called *eo nomine* description that settles their classification. The specific mention of chains, pins, charms, etc., does not limit the words "all other articles of every description" which immediately follow the specific words. Nor are we able to see how such specific words render anything subject to said subparagraphs which would not be subject thereto were not such words employed. If the expression "all articles of every description" had been employed instead of the language that was used, it would have brought within subdivision 1 the same merchandise that is now within its terms, because the use of the word "other" between "all" and "articles," as the statute now is, does not limit the scope of the words which follow it. Their limitations are to be found in the subparagraphs we have mentioned.

Our conclusion is that while the words specifically naming certain articles in subdivision 1 serve to indicate that they are of those which may fall within the subparagraphs they were used for precautionary purposes and are not entitled to the construction and effect claimed by the Government.

If further reason were necessary for the employment of these specific words, it may be found in the fact that Congress was fully advised of the great amount of litigation which had grown up over jewelry importations; that some of the cases had involved articles bearing the precise names which were employed in these specific designations, and it doubtless, from excess of caution, as we have already suggested, employed these words to indicate its intent, that, whatever might have been the effect of decisions in the past as to the classification of any of the merchandise to which these specific names might apply (and as to what it in fact had been, counsel seem to disagree), in the future, whether the merchandise bore the name "chains" or "pins" or any other of the *eo nomine* designations employed, it was, nevertheless, to be classified with the "all other articles of every description" as limited by *d and e* and *a or b*, and that such *eo nomine* description has no further force.

It is manifest that if the contention of the Government be adopted, an inconsistent, not to say an absurd, result may happen.

Articles concededly known either commonly or commercially as jewelry, but specifically mentioned in subdivision 1, would, if designed to be worn on apparel or to be carried on or about or attached to the person, and of the prescribed value, pay the high duty rate of at least 85 per cent ad valorem, while other articles also commonly or commercially known as jewelry, of like material and value, of similar construction, and designed also to be worn on apparel or to be carried on or about or attached to the person, would pay the lower rate of 60 per cent ad valorem, simply because they were not *eo nomine* mentioned in subdivision 1.

While this inconsistency alone is not a sufficient reason for placing the construction we do upon the paragraph, because whatever may be the results, if the language of a statute is clear and plain, its obvious meaning must be adopted by the courts; yet, in the presence of ambiguity, the fact that inconsistent or absurd results may flow from one construction and not from another will often lead the court to adopt the latter as most likely expressing the legislative intent.

In the first case cited it was said that the purpose of Congress was to declare that the scope of the last subdivision of paragraph 448 "was not to be contracted or invaded by any other provision of the act, and everything 'commonly or commercially known as jewelry' was to be so assessed thereunder, regardless of every other provision of the law and as if this stood alone a complete act."

In the determination of the issues here we think that the last subdivision of the paragraph may be regarded as if preceded by the word "but" or "nevertheless" or by the words "provided, however, that" and that this manner of introducing it serves more completely, accurately, and clearly to bring out its meaning as a whole. The subdivision is the last of a paragraph which comprehensively treats of jewelry and in concluding the expression of its will as to the assessment of duties upon that class of merchandise Congress, we think, meant to say that as to all articles commonly or commercially known as jewelry the lower rate of 60 per cent ad valorem should apply, notwithstanding the fact that such articles happened to fall within the *apparent eo nomine* provisions of the first subdivision of the paragraph.

The fact that this language is Congress's last word upon the subject we think confirms such conclusion.

The term "85 per cent ad valorem or its equivalent" is used in this opinion because the specific and ad valorem rates imposed under subdivisions 1 and 5 of the paragraph aggregate at least that rate and also because counsel so refer thereto.

We have not here undertaken to review the various cases and other matters referred to in argument, because our opinion, as stated,

is that the paragraph itself, as analyzed in the first Guthman case by De Vries, Judge, and in view of all matters proper to be considered in its interpretation, most of which were there adverted to, furnishes its own rule of interpretation, leads to the conclusion we have reached in these cases and renders unnecessary the consideration of any other issues discussed by counsel.

As to such of the merchandise in these cases brought before us for consideration, either on appeal or cross appeal, as was held by the board to be dutiable at the rate imposed under the first part of paragraph 448, the judgment of the board is reversed and the same are held dutiable under the last clause of said paragraph, and as to such of said merchandise as was by it found to be dutiable under the said last clause the judgment is *affirmed*. As thus modified, the cases are remanded with mandate that the necessary reliquidation be had accordingly.