(C. D. 1565)

DALE PRODUCTS CORP. ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 4, 1953)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Mollie Strum*, special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: This case relates to certain men's expansion watch bracelets or watch bands imported from Japan. The merchandise was classified under the provision in paragraph 1527 (c) of the Tariff Act of 1930 for:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, *watch bracelets, and like articles* * * *. [Italics added.]

The merchandise before us was assessed with duty at the rate of 65 per centum ad valorem under paragraph 1527 (c) (2), as modified by T. D. 51802, supplemented by T. D. 51898.

Plaintiffs claim that the merchandise in question is properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, as articles or wares not specially provided for, composed wholly or in chief value of iron, steel, or brass, but not plated with platinum, gold, or silver, or colored with gold lacquer, and dutiable at the rate of 22½ per centum ad valorem.

The plaintiffs alternatively claim the merchandise to be classifiable as jewelry, at rates equivalent to 55 per centum ad valorem, under the said paragraph 1527 (a) (2), as modified, *supra*. Although this claim was not formally abandoned, it has not been pressed by plaintiffs, and it is not further considered herein.

Fifteen witnesses testified. Seven appeared on behalf of plaintiffs and eight for defendant. In addition, both sides offered numerous exhibits. While the record is quite voluminous (consisting of more than 600 pages of testimony and approximately 75 exhibits), there is no dispute concerning the material facts. Hence, no necessity exists for a detailed analysis of the testimony and a specific reference to each exhibit. Instead, we shall refer only to pertinent portions of the record as we proceed with our disposition of the present issue.

The terms "watch bracelet" and "watch band" are used interchangeably throughout the record. Plaintiffs' witnesses prefer to designate the articles in question as watch bands, while defendant refers to them as watch bracelets.

The principle of commercial designation is not a proper subject for discussion herein. The testimony offered by both parties is consistent to the effect that the articles in question (plaintiff's collective exhibit 1) are generally known in the trade as watch attachments, or watch bracelets, or watch bands, and that the three terms are synonymous. (For easy reference throughout this decision, the present merchandise will be referred to hereinafter as "watch bands.")

These watch bands are approximately 5 inches in length. Plaintiffs concede that they "are used to encircle the wrist and hold a watch in place" (R. 3). They are of "spring link construction" that imparts to them "expansion facility," permitting the articles to be slipped over the hand and fitted securely to the wrist. One is made of stainless steel; the other is of brass. The color has a decorative effect, adding eye appeal to the articles. The parties have stipulated that they are "composed of either steel, or brass, or both; that they are not plated with platinum, gold or silver, or colored with gold lacquer" (R. 7). These watch bands are relatively low-priced articles that are sold principally to jobbers and "chain stores primarily, drug stores, automotive stores, dry goods stores, candy stores, tobacco shops" (R. 620).

Plaintiffs contend that the provision in paragraph 1527 (c), *supra*,

invoked herein by the collector, embraces only such articles as are "fundamentally ornamental in character, and excludes therefrom articles such as these, which are designed to be worn on the person, but not as an ornament" (R. 4). In other words, it is contended that the watch bands in question are "utilitarian in character," and that they have no value with respect to comfort, convenience, or adornment, and that, therefore, they are excluded from the provisions of paragraph 1527 (c).

Counsel for plaintiffs, in their brief, have reviewed the decisions that construed the statutory language "Articles * * * designed to be worn on apparel or carried on or about or attached to the person." Our discussion refers to all of those cases.

The case of *C. H. Hanson* v. *United States*, 20 Treas. Dec. 384, G. A. 7179, T. D. 31348, is the earliest expression with respect to the provision. That case arose under the Tariff Act of 1909, wherein paragraph 448, so far as pertinent to the present issue, reads as follows:

Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments, together with all other articles of every description, finished or partly finished, if set with imitation precious stones composed of glass or paste (except imitation jet), or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal * * * and designed to be worn on apparel or carried on or about or attached to the person * * * all of the foregoing * * * whether or not denominatively or otherwise provided for in any other paragraph of this Act * * *.

The Board of General Appraisers (now the United States Customs Court) analyzed the foregoing statutory language in the *C. H. Hanson* case as follows:

Paragraph 448 must be construed to harmonize, as far as practicable, with other provisions of the law, and the legislative will with regard to classes of merchandise the subject of special legislation in other schedules and paragraphs may not be indiscriminately brushed aside by reason of a phrase contained in a paragraph devoted to ornamental articles in the nature of luxuries designed to be carried on or about the person for display, and which, as luxuries, were regarded by Congress as a proper medium for increasing the revenue.

The explicit provision that certain articles are to be removed from paragraphs where they would otherwise be subject to duty and be included in paragraph 448 is not to be disregarded, however, and the identity of the particular class of goods Congress had in mind can best be established by a comparison thereof with those named in paragraph 448. Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments set with imitation precious stones or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal, valued at 20 cents or more per dozen pieces, are all ornaments intended to be worn on or about the person for display. * * * It appearing that everything named in the paragraph is in the nature of articles, or materials or parts of articles, designed to be worn on apparel or carried on or about or attached to the person for purposes of adornment, in our opinion it follows that the provision for "all other articles of every description" must be measured by the same standard.

We do not hold that all articles of utility are excluded from paragraph 448, nor, on the other hand, that articles of utility which may be carried in the pocket, although ornamental and composed of superior materials, necessarily fall for duty under that paragraph. The true test would seem to be: Were the articles designed for utilitarian purposes and merely for convenience ordinarily carried or worn on or about the person, or were they designed to be carried on or about the person for ornamental effect?

Although the *C. H. Hanson* case was not appealed, the statutory construction expressed therein finds confirmation in the decision of *Lent* v. *United States*, 1 Ct. Cust. Appls. 542, T. D. 31549. In that case, the merchandise consisted of fancy vest buttons made of brass, plated, some of which were studded with imitation precious stones. The articles were classified as "dress buttons," one of the *eo nomine* designations included within paragraph 448, *supra*. In sustaining the collector's classification and adhering to the limitation expressed in the *C. H. Hanson* case, that the articles contemplated by the said paragraph were only those primarily ornamental in character, the court said:

Paragraph 448 appears to be confined to articles of personal adornment, and it would seem therefore that by "dress buttons" was meant just such buttons as those under consideration. If the term "dress buttons" does not mean a fancy button—a button intended to adorn or ornament the dress—a button designed for something more than mere utility, it is hard to see just what meaning consistent with paragraph 427 could be given to it. * * * In our opinion, the buttons which are the subject of appeal are dress buttons designed to be worn on the apparel. Some of them are set with imitation precious stones, and giving to the collector's decision the benefit of the presumption of correctness to which it is entitled all of them are composed in chief value of brass and valued at more than 20 cents per dozen pieces. They are therefore dutiable as assessed * * *.

The important phase of the judicial interpretation enunciated in the two cited cases is the fixing of a standard—finding that the specifically enumerated articles are ornamental articles in the nature of luxuries—that formed the basis for classification of all merchandise contemplated by the said provision in paragraph 448.

In the succeeding tariff acts, following the Tariff Act of 1909, the paragraphs containing the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," gave rise to new judicial pronouncements based on materially different language employed. The Tariff Act of 1913 (paragraph 356) and the Tariff Act of 1922 (paragraph 1428) provided for articles "designed to be worn on apparel or carried on or about or attached to the person" as follows:

* * * and articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins,

powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, * * *.

The foregoing statutory language, when it appeared in paragraph 356 of the Tariff Act of 1913, was construed in the case of *Gallagher & Ascher et al.* v. *United States,* 6 Ct. Cust. Appls. 105, T. D. 35343. There, the court described the merchandise under consideration as "so-called 'pro-repel' lead pencils, meaning that the lead is held by a small cylinder which slides in and out at the end of a larger cylinder or barrel." The pencils were composed entirely of base metal, except that some of them had imitation precious stones set in their top ends. Referring to the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," the court stated as follows:

* * * By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

The foregoing judicial interpretation given in the *Gallagher & Ascher et al.* case was followed in *United States* v. *Horstmann Co.,* 14 Ct. Cust. Appls. 443, T. D. 42079, which construed the provisions of paragraph 1428 of the Tariff Act of 1922. After referring to earlier cases, including the *Gallagher & Ascher et al.* case, the late Judge Hatfield, speaking for the court in the *Horstmann Co.* case, stated as follows:

It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to the person as *"incidental* articles of *mere personal comfort, convenience, or adornment."* (Italics not quoted.) Such articles may be of utility or of adornment, or they may possess both of these qualities; but, unless they are designed to be worn or carried, or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

It is true that these decisions relate to articles not enumerated in the paragraph by name. However, it was there definitely pointed out that articles not enumerated by name must, in order to be classifiable thereunder, be like those enumerated; and, in order to be like such articles, they must be "incidental articles of *mere personal comfort, convenience, or adornment."* (Italics not quoted.) If articles not provided for by name must answer to the description of "incidental articles of mere personal comfort, convenience, or adornment," in order to be like those *eo nomine* provided for, it follows that those intended to be included within the *eo nomine* provisions are of that character. Accordingly, articles not of that character were not intended to be covered by the provisions in question even though they respond generally to *eo nomine* designations therein. [All italics quoted in decision.]

The influence herein of the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases comes from their clear expressions to the effect that paragraph 356 of the Tariff Act of 1913 and paragraph 1428 of the Tariff Act of 1922, so far as they affect the present issue, included articles "of utility or of adornment, or they may possess both of these qualities." That statutory construction, giving a broadened scope to the said paragraphs, was a definite departure from the interpretation placed upon the earlier provision in paragraph 448 of the Tariff Act of 1909, which was limited, under the *C. H. Hanson* and *Lent* cases, *supra*, to articles that were predominantly ornamental. Obviously, the later judicial pronouncement was based upon the new and additional language found in paragraphs 356 and 1428, *supra*, as distinguished from paragraph 448 of the Tariff Act of 1909. The earliest provision, as shown in the Tariff Act of 1909, listed nine *eo nomine* designations, "all ornaments," that were followed by the general provision for "all other articles of every description." In the later tariff acts, paragraph 356 and paragraph 1428, *supra*, provision was made, first, for the general classification of articles "designed to be worn on apparel or carried on or about or attached to the person," and then followed the enumeration of 23 exemplars which the appellate court identified as diversified in character. In other words, classification under paragraph 448 of the Tariff Act of 1909 was controlled primarily by the *eo nomine* designations that introduced the paragraph. In paragraphs 356 and 1428 of the Tariff Acts of 1913 and 1922, respectively, the controlling language was a generic classification, embracing a wide variety of articles whose predominant characteristic was that "they must be 'incidental articles of mere

personal comfort, convenience, or adornment.'" (*Horstmann Co.* case, *supra.*)

The present issue, as hereinabove set forth, involves the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," as contemplated by paragraph 1527 (c) of the Tariff Act of 1930. The language thereof, so far as pertinent herein, is identical with the phraseology employed in paragraph 356 of the Tariff Act of 1913 and paragraph 1428 of the Tariff Act of 1922, except that the designation, "watch bracelets," as an exemplar, has been added to those which were enumerated in the provisions of paragraphs 356 and 1428 of the two earlier tariff acts. It follows, therefore, that the judicial interpretations announced in the *Gallagher & Ascher et al.* and *Horstmann Co.* cases, *supra*, shall also apply in construing the language of paragraph 1527 (c), invoked herein by the collector, and as hereinabove set forth. Thus we hold that the provision for "Articles * * * designed to be worn on apparel or carried on or about or attached to the person, such as and including * * * watch bracelets, and like articles," in said paragraph 1527 (c) includes articles "of utility or of adornment, or they may possess both of these qualities," the *Horstmann Co.* case, and which "are carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment," the *Gallagher & Ascher et al.* case.

The recent case of *Weyenberg Shoe Mfg. Co.* v. *United States*, 38 C. C. P. A. (Customs) 122, C. A. D. 448, emphasized that the key for classification of merchandise under said paragraph 1527 (c) is in the words "incidental articles of mere personal comfort, convenience, or adornment." In that case, the merchandise consisted of buckles used exclusively in the manufacture of military-type oxford shoes for officers and noncommissioned men in the Armed Forces of the United States and also by civilians who desired such kind of shoes. The court found that "The buckles are firmly attached to the shoes and together with a strap covering the instep portion of the shoe, fasten the shoe to the wearer's foot in the same manner as shoe laces, eyes, or latches are ordinarily used." Excluding the articles from the provision of said paragraph 1527 (c), the court stated as follows:

It is clear to us that the involved buckles are not such as are "incidental articles of mere personal comfort, convenience, or adornment," and are for that reason removed from classification under paragraph 1527.

In reaching that conclusion, the court observed that the buckles there under consideration, being valued at more than 20 cents per dozen pieces, did not, therefore, "come within the scope of the shoe buckle paragraph," paragraph 346 of the Tariff Act of 1930, which is confined to articles of lesser value.

The decision in the *Weyenberg Shoe Mfg. Co.* case is consistent with earlier ones, holding that vocational articles are removed from classification as articles designed to be worn on or carried about the person. *United States* v. *Sussfeld, Lorsch & Co.*, 7 Ct. Cust. Appls. 126, T. D. 36454; the *Horstmann Co.* case, *supra*. The *Sussfeld, Lorsch & Co.* case arose under the Tariff Act of 1913 and involved pedometers, which the court described as "instruments resembling watches, having a little catch attached by which they are fastened to the vest pocket." Their use was to indicate the distance walked by the persons carrying them. The record established that the pedometers were chiefly used by "the employees of railroad or telephone companies in laying out posts or by land companies in measuring plots of land." The court expressed its conclusion as follows:

> The articles here involved are not articles which in any proper sense can be termed articles of mere personal comfort, convenience, or adornment. They are vocational instruments and not "such as" or "like" the articles enumerated.

The *Horstmann Co.* case, *supra*, arose under the Tariff Act of 1922, and involved brass saber chains, which the court described as follows:

> The chains in question were designed for the exclusive use of officers in the military service. They are an essential part of such officers' equipment—made such by military regulations and worn as such. They are not worn as incidental articles of mere personal comfort, convenience, or adornment, but as an essential part of their equipment. The chains in question are vocational articles; and while chains are *eo nomine* provided for in paragraph 1428, these are not the kind intended to be covered by that designation. *United States* v. *Sussfeld, Lorsch & Co.*, *supra*.

It is clear that the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," such as the articles listed by name, and "like articles," in paragraph 1527 (c), is not limited to merchandise predominantly ornamental in character, as alleged by plaintiffs. On the contrary, the provision must be given a liberal construction, sufficiently broad in scope to include articles that serve a utilitarian purpose, as well as articles that are both ornamental and utilitarian in character. The controlling test for classification is whether the merchandise can be identified as "incidental articles of mere personal comfort, convenience, or adornment."

That the watch bands in question, as established through plaintiffs' uncontradicted testimony, were not in existence at and prior to the enactment of the Tariff Act of 1930 and did not enter the trade and commerce of the United States until 1939, is not a material factor in determining the proper classification of these articles. "It is axiomatic that Congress legislates for the future as well as for the present," *United States* v. *Geo. Wm. Rueff, Inc.*, 41 C. C. P. A. (Customs) 95 C. A. D. 535. Hence, paragraph 1527 (c), invoked by the collector, will include the watch bands under consideration, if they are shown to be

within one of the classes of articles contemplated thereby, without regard to the time when they became articles of commerce.

Counsel for plaintiffs, in their brief, have cited cases wherein the merchandise consisted of wristlets or straps fitted with metal buckles and used for holding wrist watches. *United States* v. *Wittnauer Co.*, 8 Ct. Cust. Appls. 370, T. D. 37628; *United States* v. *Strasburger & Co.*, 9 Ct. Cust. Appls. 138, T. D. 37982; *United States* v. *European Watch & Clock Co.*, 11 Ct. Cust. Appls. 363, T. D. 39160. The significant factor in each of those cases is that all of them arose under the Tariff Act of 1913 (paragraph 356), which did not include "watch bracelets" as one of the named exemplars. The omission is significant in view of the reasoning of the court in the *Wittnauer Co.* case, *supra*, the earliest of the three citations. In the said *Wittnauer Co.* case, the court, excluding the wristlets and straps from classification under paragraph 356 of the Tariff Act of 1913, stated as follows:

It is conceded that the importations are valued at over 20 cents per dozen pieces. They, however, are not of any one of the above statutory enumerations. Neither are they a part of any one such. Nor is it satisfactorily pointed out that they are like any one of the above enumerated articles in any controlling particular, in that all of the foregoing enumerated articles are per se worn to subserve some purpose of personal comfort, convenience, or adornment, whereas, these articles are not so worn but to hold in place another article so worn. That article, however, is not one of those so enumerated by Congress in paragraph 356, but, another and different article, to wit, a watch, expressly made dutiable in another paragraph of the tariff act, to wit, 161. These articles, therefore, are not articles worn on the person for comfort, convenience, or adornment, nor are they parts of any such article made dutiable because so worn under paragraph 356.

In the *Strasburger & Co.* case, the foregoing was repeated with approval, and then the court observed that the wristband "simply holds this otherwise completed mechanism [a wrist watch] in a convenient position for use." The *European Watch & Clock Co.* case, *supra*, cited and followed the two previous cases.

The importance, to the present issue, of the above quotation from the *Wittnauer & Co.* case is in the emphasis contained therein to the effect that there was no specific mention made of "wristlets" or "watch straps," among the enumerated exemplars, and that the merchandise under consideration was neither a part nor was it like any of the enumerated articles.

In paragraph 1527 (c) of the Tariff Act of 1930, which controls classification of the present merchandise, the designation "watch bracelets" was included as one of the named exemplars for the first time. Counsel for both parties, attempting to explain the presence of that added designation, refer to certain legislative history. Particular mention is made in the briefs of both parties to a statement presented by the New England Manufacturing Jewelers' and Silversmiths' Association (Inc.) at hearings before the Committee on Ways and Means (Hearings before Committee on Ways and Means, House

of Representatives, Seventieth Congress, Second Session, p. 7453) when attention was directed to the need for including "'watch bracelets' among the 'articles designed to be worn on apparel or carried on or about or attached to the person'." Reference is also made to a report of the Tariff Commission, published in August 1953, made in connection with the Tariff Commission Investigation No. 21 under section 7 of the Trade Agreements Extension Act of 1951, relating to watch bracelets or watch bands. Counsel for both sides point to the said report of the Tariff Commission as favorable to the claims alleged by each one. There is no reason under the present issue for resorting to the extrinsic aids suggested by the respective parties. The statutory language under consideration is free from ambiguity; hence, its judicial interpretation must come from the act itself. In *Schwegmann Brothers et al.* v. *Calvert Distillers Corp.*, 341 U. S. 384, Mr. Justice Jackson, in a concurring opinion, referring to the weight to be given to legislative history, stated:

Resort to legislative history is only justified where the face of the Act is inescapably ambiguous, and then I think we should not go beyond Committee reports, which presumably are well considered and carefully prepared. I cannot deny that I have sometimes offended against that rule. But to select casual statements from floor debates, not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions. The Rules of the House and Senate, with the sanction of the Constitution, require three readings of an Act in each House before final enactment. That is intended, I take it, to make sure that each House knows what it is passing and passes what it wants, and that what is enacted was formally reduced to writing. It is the business of Congress to sum up its own debates in its legislation. Moreover, it is only the words of the bill that have presidential approval, where that approval is given. It is not to be supposed that, in signing a bill, the President endorses the whole Congressional Record. For us to undertake to reconstruct an enactment from legislative history is merely to involve the Court in political controversies which are quite proper in the enactment of a bill but should have no place in its interpretation.

\*      \*      \*      \*      \*      \*      \*

By and large, I think our function was well stated by Mr. Justice Holmes: "We do not inquire what the legislature meant; we ask only what the statute means." Holmes, Collected Legal Papers, 207. See also *Soon Hing* v. *Crowley*, 113 U. S. 703, 710–711.

On the same subject, the Court of Customs and Patent Appeals, in its recent decision in the case of *United States* v. *Perry Ryer & Co.*, 41 C. C. P. A. (Customs) 18, C. A. D. 524, referring to certain testimony and statements offered to the Committee on Finance of the United States Senate in connection with proposed tariff legislation, stated that:

\* \* \* it is well to remember that Congress has never delegated to unofficial persons appearing before its committees advocating legislation, the authority to determine its intention. Only Courts have been clothed with authority in that

respect and in construing a statute the courts themselves seek aid extrinsic of it only in cases where it is ambiguous. In the case of *Railroad Commission of Wisconsin et al.* v. *Chicago, Burlington, Quincy Railroad Co.*, 257 U. S. 563, 588–9, the Supreme Court· declared that extraneous aids "are only admissible to solve doubt and not to create it." See also *United States* v. *Kung Chen Fur Corp.* 38 C. C. P. A. (Customs) 107, C. A. D. 447, and cases therein cited.

Consistent with the foregoing, we attach no weight, in our disposition of the question before us, to the legislative history cited by the respective parties.

The watch bands under consideration are exclusively used to encircle the wrist of the user for the purpose of holding a watch in place. That they are relatively inexpensive and are used only with cheap watches, as shown by the present record, have no bearing on their tariff classification. They are "valued above 20 cents per dozen pieces," and, therefore, satisfy the only element of value essential for classification under paragraph 1527 (c). Most important to the present issue is the character of usage of these watch bands.

It is a matter of common knowledge that the purpose of carrying a watch is highly utilitarian, and that the manner in which a watch is carried varies, depending on the personal preference of the user. A watch may be carried in the pocket, or attached to clothing, or held to the wrist, but whatever method may be employed requires an accessory for convenience in carrying the watch. For instance, a chain is commonly used in connection with a watch carried in the pocket; so-called lapel watches, used by women, are held to clothing by some sort of a pin, and a watch bracelet holds a wrist watch. It is significant that each of those accessories—"chains," "pins," and "watch bracelets"—are among the named exemplars enumerated in paragraph 1527 (c). The watch bands in question, by their design and their exclusive use, are, like the chains, pins, and watch bracelets just mentioned, articles of convenience designed to be carried on or about or attached to the person, and, as such, are included within the classes of merchandise contemplated by paragraph 1527 (c), *supra*, as assessed by the collector.

In addition to the cases hereinabove outlined and discussed, plaintiffs have cited *Cohn & Rosenberger* v. *United States*, 4 Ct. Cust. Appls. 378, T. D. 33536; *Ignaz Strauss & Co., Inc.* v. *United States*, 21 Cust. Ct. 82, C. D. 1132, affirmed in *United States* v. *Ignaz Strauss & Co., Inc.*, 37 C. C. P. A. (Customs) 48, C. A. D. 418; and *United States* v. *Bailey, Green & Elger, Inc.*, 30 C. C. P. A. (Customs) 228, C. A. D. 237. We have carefully examined and studied each of those cases and find that none offers any support to plaintiffs' position herein.

For all of the reasons hereinabove set forth, the protests are overruled and judgment will be rendered accordingly.