### UNITED STATES v. BUFFALO NATURAL GAS FUEL CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1897.)

**1. CUSTOMS DUTIES—CONSTRUCTION OF LAWS—WORDS OF CLASSIFICATION.**
    In tariff laws, words of classification are, in general, to be construed either in their common or their commercial meaning, as opposed to their scientific or technical sense.

**2. SAME—CLASSIFICATION—NATURAL GAS.**
    Natural gas was exempt from duty under paragraph 651 of the act of 1890, as a crude mineral, and was not dutiable under section 4, as a "raw or unmanufactured article not enumerated." 73 Fed. 191, affirmed.

This is an appeal from a decision of the circuit court for the Northern district of New York (73 Fed. 191) affirming a decision of the board of general appraisers which reversed the decision of the collector of the port of New York assessing a rate of duty upon natural gas. The gas, which is obtained by boring into the ground, comes from Shirkstown, in the dominion of Canada, about 12 miles from Buffalo. It is conveyed, through pipes, to and across the Niagara river, and is thus imported into the city of Buffalo, and there used in the same form in which it is taken from the earth. The importation in question was on August 1 and 4 and November 21, 1891.

Edward B. Whitney, Asst. Atty. Gen., and Wm. A. Poucher, for appellant.

Herbert P. Bissell, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The tariff act in force at the date of this importation was what is known as the "McKinley Act," and was passed October 1, 1890. Prior to its passage natural gas had been obtained from the earth by boring or drilling in many different localities within the United States, had been bought and sold commercially, and had gone into use extensively; but, up to October 1, 1890, none had ever been imported. It is not mentioned by name in the tariff act, nor is it specifically enumerated therein. The collector assessed it as dutiable at 10 per cent., under section 4 of the act, as a "raw or unmanufactured article not enumerated or provided for." The importers protested, insisting that it was enumerated in one or other of the two following paragraphs of the free list:

"496. Asphaltum and bitumen, crude."

"651. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other processes of manufacture, not specially provided for in this act."

The board of general appraisers found that natural gas was a crude mineral, and exempt from duty under paragraph 651; and the circuit court has sustained that decision.

Much testimony from scientific men, geologists, mineralogists, and chemists was introduced upon the hearing before the board. It is interesting, but not especially helpful to a determination of the question presented here. In the "interpretation of the revenue laws, words are to be taken in their commonly received and popular sense, or according to their commercial designation if that differs from the ordinary understanding of the word." Lutz v. Magone, 153 U. S. 105, 14 Sup. Ct. 777.

In U. S. v. Breed, 1 Sumn. 159, Fed. Cas. No. 14,638, Mr. Justice Story, referring to Two Hundred Chests of Tea, 9 Wheat. 430, says:

"It was there held that, in construing revenue laws, we were to consider the words, not as used in the scientific or technical sense, where things are classified according to their scientific characters and properties;" and "laws of this sort taxed things by their common and usual denominations among the people, and not according to their denominations among naturalists or botanists or men of science."

Reference may also be had to Robertson v. Salomon, 130 U. S. 412, 9 Sup. Ct. 559; Nix v. Hedden, 149 U. S. 304, 13 Sup. Ct. 881; and Lutz v. Magone, 153 U. S. 105, 14 Sup. Ct. 777. In two of these cases shelled beans, although shown to be "seeds" in the language of botany, and tomatoes, although botanically they were "fruit," were both held to be "vegetables," within the meaning of that word in the tariff act. In the third case it was held that saccharine, a substance 300 times as sweet as sugar, although scientifically an "acid," was not an acid for revenue purposes.

There is no evidence in the record of any special trade meaning of the words "crude minerals." We are left, then, to determine the meaning of these words from judicial knowledge of the ordinary meanings of words of common speech, unless there is sufficient in the record to show that some modification of their ordinary signification was in the mind of congress when it passed the act. If the question whether the word "minerals," in ordinary speech, would include such an article as natural gas, were to be settled solely from

reference to the dictionaries, its solution might not be easy. In view, however, of the various official publications by the federal government set forth in the record, and which are not intended for scholars or scientific men, but to give to congress and to the people the best knowledge the compilers can, there can be little doubt as to what congress understood to be the scope and meaning of the words,—a scope and meaning which is within some, at least, of the definitions of the lexicographers.

For several years prior to the passage of the tariff act of 1890 there has been prepared each year, by the bureau of statistics in the treasury department, a so-called "Statistical Abstract of the United States." It is prepared under the direction of the secretary of the treasury, and contains statistics of finance, coinage, commerce, etc. It is printed each year at the government printing office, and transmitted by the secretary of the treasury to the house of representatives. These abstracts each contain tables giving the "qualities and values of minerals produced in the United States" during the five or six years immediately preceding the year of publication. In the table contained in the Statistical Abstract of 1888, minerals are divided into metallic and nonmetallic. Of the latter class 35 species are enumerated, and the sixth on the list is "natural gas," appearing between petroleum and cement. The same is true of the Statistical Abstracts of 1889 and 1890. It thus appears that the reports, to which it is to be supposed that congress refers for enlightenment as to the statistics of the products of this country, used the word "minerals" in a sense broad enough to include natural gas; and, if there be any doubt as to the ordinary meaning of that word, it is to be presumed that congress, when legislating as to the rates of duty to be laid upon the products of other countries, used such word with a meaning equally comprehensive.

We do not undertake in this case to decide whether or not natural gas is a "crude bitumen." If it be such, the provisions of paragraph 496 would control its classification, being more specific than those of paragraph 651. Both paragraphs are in the free list, and, since natural gas comes fairly within the general provision for crude minerals, and is therefore free, it is unnecessary now to inquire whether it is also within the more specific description "crude bitumen," which is also free.

The board of general appraisers properly reversed the collector's assessment of the article for duty. It is not a "raw or unmanufactured article not enumerated." The decision of the circuit court is affirmed.

WALLACE, Circuit Judge. I concur in an affirmance in this case, but not for the reasons given in the prevailing opinion. In scientific classification natural gas may be considered a mineral, but in the tariff act the term "minerals" is to be read in its common acceptation, in the absence of a different commercial signification, and does not, I think, include a gas, but means something which, in ordinary parlance, is mined. I think the importation in controversy should be classified under the provision of the free list which

exempts from duty "asphaltum and bitumen, crude." If it belongs there, as this is the more specific term of description, it is excluded from the category of "minerals, crude." According to the testimony in the record, "bitumen" is a generic term, applied to a large number of natural substances which consist largely or chiefly of hydrocarbons. This substance may be gaseous, as natural gas or marsh gas; fluid, as petroleum or naphtha; viscous, as the semi-fluid asphaltum; or solid, as some forms of asphaltum. According to McCulloch's Commercial Dictionary, bitumen includes a considerable range of inflammable mineral substances, burning with the flames in the open air, which differ in consistency from a thin fluid to a solid. He says:

"Near the village of Amiano, in the state of Parma, there exists a spring which yields this substance in a sufficient quantity to illuminate the city of Genoa, for which purpose it is employed."