UNITED STATES *v.* DORAGON CO. ET AL. (No. 2372).[1]

1. EVIDENCE—JUDICIAL NOTICE—REFERENCE WORKS.

The meaning of words as used in common speech may change.  Courts may always refer to dictionaries or other recognized authorities to refresh their memory and understanding as to the common meaning of language, and will adjudge its import as used in statutes in harmony therewith if possible.  Testimony as to the common meaning of words may also be received; but only as an aid to the memory and understanding of the court.

2. JEWELRY—PARAGRAPH 1428, TARIFF ACT OF 1922.

Under former tariff acts, this court has held that "jewelry," in the common acceptation, meant articles worn or used primarily or chiefly for personal adornment, composed of the precious metals or imitations thereof or of precious or semiprecious stones or pearls or imitations thereof, or cameos, coral or amber, including artificial, synthetic or reconstructed pearls or rubies, or other precious stones, strung or set; and that a classification as jewelry of merchandise not composed of any of the foregoing was prima facie erroneous.  Paragraph 356, tariff act of 1913, classifies "Jewelry, commonly or commercially so known," and paragraph 1428, tariff act of 1922, adds "finished or unfinished, of whatever material composed."  The addition works no change in the law as stated.  To hold that the amendment means that all articles worn for personal adornment are jewelry would tend to absurd results; and would mean the levying of taxes upon the shifting basis of caprice, whim, or fashion.

3. EVIDENCE—JUDICIAL NOTICE.

The court can not take judicial notice that the merchandise in the case at bar, claimed to be jewelry, is sold from the "jewelry counter."

4. EVIDENCE—SUFFICIENCY.

The presumed correctness of the collector's classification of merchandise as jewelry is removed by a stipulation that it is made of materials of which jewelry can not be made.

5. PROTEST—PRESUMPTION FAVORS COLLECTOR.

A protest against an erroneous classification, making no claim for the correct one, was properly overruled.

6. JUDGMENT ON APPEAL.

Where the protest claimed a lower rate of duty, and the board's overruling of it was not appealed from, the judgment of the board must be affirmed in this court.

---

[1] T. D. 40732.

7. NECKLACES OF BONE OR IVORY BEADS.

Necklaces composed of bone beads and necklaces composed of ivory beads are classifiable as articles of beads, under paragraph 1403, tariff act of 1922, rather than as jewelry, under paragraph 1428.—United States *v*. International Forwarding Co. (12 Ct. Cust. Appls. 530; T. D. 40733), decided concurrently herewith.

8. IVORY PERSONAL ORNAMENTS.

Ivory pendants and brooches are dutiable as manufactures of ivory under paragraph 1440, tariff act of 1922, rather than as jewelry under paragraph 1428.

9. BONE PERSONAL ORNAMENTS.

Bone pendants are classifiable as manufactures of bone under paragraph 1439, tariff act of 1922, rather than as jewelry under paragraph 1428.

United States Court of Customs Appeals, March 6, 1925

APPEAL from Board of United States General Appraisers, Abstract 46689

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Frank L. Lawrence* (*Martin T. Baldwin* and *Richard Neville* of counsel) for appellee.

[Oral argument Nov. 18, 1924, by Mr. Charles D. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This case involves numerous protests made by different importers and covering a variety of articles.

No samples are before us, but a stipulation between counsel is of record showing in detail the material of which each article is made and the descriptive names of the articles themselves. Therefrom it appears that there were bone-bead necklaces with bone clasps, bone pendants with pierced holes, ivory pendants with pierced holes, ivory roses, ivory necklaces with ivory clasps, ivory pendants in the form of roses with pierced holes, ivory brooches in the form of flowers with small brass pins and ivory pendants in the form of flowers with small brass rings. The stipulation also stated that the articles were valued at more than 20 cents per dozen pieces and were designed to be worn on or about the person.

Importers concede and the argument of the Government proceeds upon the theory that they are intended to be and are used for adornment.

From the stipulation it is apparent that all these articles are made either of bone or ivory, with the exception of those having a brass pin or ring and it is not claimed that the classification of the articles carrying the same is thereby affected. While the stipulation does

not state that the ivory necklaces are composed of ivory beads, that fact was assumed by the Board of General Appraisers and is not denied by either party.

These goods were all classified by the collector as jewelry under paragraph 1428 of the tariff act of 1922 except so much thereof as was covered by protest 972395, more particularly hereinafter referred to.

The part of paragraph 1428 under which the classification was made and which is all that is necessary to consider here, reads as follows:

Jewelry commonly or commercially so known, finished or unfinished, of whatever material composed, valued above 20 cents per dozen pieces  *  *  *

The only question standing for determination is whether, upon this record, the classification of the merchandise as jewelry has been successfully challenged.

No witnesses were called by either party at the hearing of the protest before the Board of General Appraisers and so, of course, there is no evidence tending to establish commercial designation; nor is there any testimony tending to show the meaning of the term "jewelry commonly so known."

The quoted part of paragraph 1428 is a reenactment of paragraph 356 of the act of 1913, the only difference between the two, other than a change in the rate of duty, being the term "finished or unfinished, of whatever material composed."

This court construing the jewelry paragraphs of preceding acts has in effect held that "jewelry," in the common acceptation, meant articles worn or used primarily or chiefly for personal adornment, composed of the precious metals or imitations thereof or of precious or semiprecious stones or pearls, or imitations thereof, or cameos, coral or amber, including artificial, synthetic or reconstructed pearls or rubies, or other precious stones, strung or set. And held that when it appeared that an importation claimed to be jewelry was not composed of any of the foregoing, the classification as jewelry would not be sustained, nothing further appearing to support such classification than the appearance of the merchandise itself.

This conclusion was reached after an extended examination of statutes, judicial decisions, and lexicographic authorities.—Wolff v. United States (2 Ct. Cust. Appls. 11; T. D. 31572); United States v. Guthman (3 Ct. Cust. Appls. 276; T. D. 32572); Cohn v. United States (4 Ct. Cust. Appls. 378; T. D. 33536); American Bead Co. v. United States (7 Ct. Cust. Appls. 18; T. D. 36259); United States v. Mandel Bros. (10 Ct. Cust. Appls. 44; T. D. 38294); United States v. Darling (10 Id. 57; T. D. 38334); United States v. European Watch & Clock Co. (11 Ct. Cust. Appls. 363; T. D. 39160).

It is apparent, under the foregoing rule of interpretation, that if paragraph 1428 were the same as 356 of the act of 1913, the merchandise here is not jewelry, because of the material of which composed. The issue for determination, therefore, is whether the insertion of the words, "finished or unfinished, of whatever material composed," requires or justifies its classification as jewelry.

The Government in substance argues that in view of this amendment it must now be held that all articles worn for personal adornment are commonly known as jewelry, insisting that *use* is now the only test to be applied in determining whether or not an article is jewelry in the common understanding.

This contention carried to its logical conclusion plainly is that articles composed, for instance, of marble, bone, brass, iron, copper, steel, nickel, glass, paste, wood, leather, gelatin, celluloid, fur, hair, shells, feathers, seeds, artificial fruits, or flowers, etc., must now be held to be jewelry in the common understanding if used primarily for personal adornment. Indeed, it would seem that the circlets of ribbon worn by women upon the hair or of velvet or other fabric worn around the neck, if for personal adornment only, must now receive the same classification.

We think such an interpretation of the paragraph will produce absurd results which should not lightly be imputed to the legislative body, and until Congress has more clearly indicated such to be its will, we are loath to go to this extreme.

Under that view the common meaning of the word "jewelry" will always be subject to caprice, whim, or fashion, and an article which now must be held to be jewelry within a short time will cease to be such, thus basing classification upon a standard as unstable as the shifting sands. Taxes are not generally imposed on such an uncertain basis.

If Congress had declared that for the purpose of paragraph 1428 all articles used chiefly for personal adornment, of whatever material composed, should be deemed to be jewelry, if of the value therein specified, a different question would be presented. Such language would have been unambiguous and would have justified the Government's contention.

The term "jewelry commonly or commercially so known" in paragraph 356 of the preceding statute would seem to cover all finished jewelry of whatever material composed, because what was not *commonly* known as jewelry would, undoubtedly, be *commercially* so known. One important effect of the amendment was to include unfinished jewelry, something not within paragraph 356. The phrase, "of whatever material composed" may have been used for the sake of precaution, to make perfectly clear that articles of

personal adornment, classifiable under other paragraphs because of the component material, should, nevertheless, if commonly or commercially known as jewelry, be classified under paragraph 1428. It is unnecessary for us now to say just what Congress did intend by its use.

In defining the common understanding of the word "jewelry" in the cases hereinbefore referred to, it must be noted that it was also said, in effect, that this was not a hard and fast rule but was, in the absence of anything to the contrary, to be deemed prima facie determinative.

In other words, unless it was made* to appear that articles, not composed of any of the specified materials, were commonly known as jewelry, we would not so regard them.

We recognize, however, that the meaning of words as used in common speech may change. Courts may always refer to standard lexicons or other recognized authorities to refresh their memory and understanding as to the common meaning of language and will adjudge its import as used in statutes in harmony therewith, if possible.

Testimony of witnesses as to the common meaning of words may also be received.—American Bead Co. v. United States, supra; United States v. Fuel Co. (78 Fed. 110); Hempstead v. Thomas (122 Fed. 538); Nordlinger v. United States (127 Fed. 683); Robertson v. Salomon (130 U. S. 413); Nix v. Hedden (149 U. S. 304).

Such testimony is, however, advisory only and as an aid to the memory and understanding of the court.—Sonn v. Magone (159 U. S. 417) and cases supra.

We still are of opinion that the common acceptation of the word "jewelry" is substantially as heretofore determined by this court, in the cited authorities, and there is nothing before us which tends to show any change in such meaning or that the merchandise here is jewelry commonly so known. It follows that the classification as jewelry can not be upheld.

If the Government had desired to advise the court by testimony of competent witnesses that the common understanding of the word "jewelry" was different from that heretofore determined in this court, or that the merchandise here was commonly known as jewelry, the opportunity so to do was open to it before the board. Especially was this so in view of the new phrase, "of whatever material composed."

The Government contends that we may take judicial cognizance of what it claims to be the fact that the merchandise here is sold from the "jewelry counter," thereby raising a presumption that it is regarded as jewelry. As to this, it is sufficient to say that if the

claimed fact exists, the Government should have established it by proof.

We find no merit in the Government's argument that Congress regarded such articles as these as "the jewelry of the poor," and for that reason intended to impose thereon the high duty rate of paragraph 1428.

Its other contention that the presumed correctness of the classification has not been overcome may be answered by saying that the stipulation showing the materials of which these articles are composed, in view of our interpretation of the common meaning of the word "jewelry," sufficiently overcomes that presumption.

It remains to determine the classification of these articles in view of the various protests.

In United States *v.* International Forwarding Co. (12 Ct. Cust. Appls. 530; T. D. 40733), concurrently decided, the question of the classification of beaded necklaces is fully considered and may be referred to.

The views there expressed as to necklaces composed of mother-of-pearl beads are equally applicable to necklaces composed of bone beads or of beads of ivory and we forbear to repeat the discussion here.

Consistently therewith, the bone-bead necklaces here are properly classifiable under paragraph 1403 and dutiable thereunder at 60 per cent ad valorem as held by the board.

But in protest 968918, which in part relates to such necklaces, the importers' protest does not claim under paragraph 1403, but claims under paragraph 1439 and others of the act, none of which is applicable. Hence as to so many of the necklaces covered by that protest, the assessment thereof by the collector as jewelry, although erroneous, must stand, and the protest against such classification was properly overruled below.

The bone-bead necklaces covered by protest 972395 were classified by the collector under paragraph 1403 and assessed at 60 per cent ad valorem, which we hold to be proper. The protest claimed a lower rate of duty as beads under the same paragraph, but as importer did not appeal from the judgment of the board sustaining the collector's classification its judgment should be affirmed. The bone pendants are classifiable under paragraph 1439.

The necklaces composed of ivory beads are dutiable under paragraph 1403 at 60 per cent ad valorem as claimed in the protests and held by the board.

All other articles composed of ivory are dutiable at 35 per cent ad valorem as manufactures of ivory under paragraph 1440, and the board so held.

The result is that the judgment below is in all respects *affirmed.*