### JAMES H. DUNHAM & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.    December 27, 1906.)

No. 82 (3,993).

1. CUSTOMS DUTIES—CLASSIFICATION—COTTON TABLE DAMASK—SPECIFIC ENU-
   MERATION.
       The provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule I, par.
   321, 30 Stat. 180 [U. S. Comp. St. 1901, p. 1661], for "cotton table damask,"
   is more specific than those in paragraphs 304 to 308, 30 Stat. 175 [U. S.
   Comp. St. 1901, p. 1656], for cotton cloth of various specified numbers of
   threads to the square inch.

2. SAME—COMPLETED ARTICLES—COMMERCIAL DESIGNATION.
       The expression "cotton table damask," in Tariff Act July 24, 1897, c.
   11, § 1, Schedule I, par. 321, 30 Stat. 180 [U. S. Comp. St. 1901, p. 1661],
   was not used by Congress according to any trade meaning it might
   have, but according to its denominative, or common, popular sense, which
   includes completed articles as well as goods in the piece from which such
   articles are made.

3. SAME — CONGRESSIONAL RECOGNITION OF RULING OF SECRETARY OF THE
   TREASURY.
       In enacting a tariff provision for "cotton table damask in the piece or
   otherwise," Congress is presumed to have acted in reference to a deci-
   sion of the Secretary of the Treasury, construing a provision for "cot-
   ton damask" in a previous tariff act.

4. SAME—CONSTRUCTION—HISTORY OF TARIFF LEGISLATION.
       Held, that the provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule
   I, par. 321, 30 Stat. 180 [U. S. Comp. St. 1901, p. 1661], for cotton table
   damask, should be construed in the light of corresponding provisions of
   previous acts.

Appeal from the Circuit Court of the United States for the Southern District of New York.

The decision below affirmed a decision of the Board of United States General Appraisers (G. A. 6,010; T. D. 26,266), which had overruled

protests of the importers against the assessment of duty by the collector of customs at the port of New York.

The opinion filed in the Circuit Court reads as follows:

"HAZEL, District Judge. I have read the evidence, including the testimony before the Board, which was taken in another case, and have examined the case of Douglass & Berry v. U. S. (C. C.) 123 Fed. 993, and cases there cited, to which my attention was directed on the hearing. I am of opinion that the findings of the Board upon the facts should not be distrubed by me, inasmuch as they are fairly supported by the evidence. The decision of the Board of General Appraisers is affirmed."

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for the importers.

D. Frank Lloyd, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The merchandise consists of cotton damask table covers, napkins, doilies, and similar completed articles. The relevant paragraphs of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule I, 30 Stat. 175–177 [U. S. Comp. St. 1901, pp. 1656–1658]) are:

304 to 308, the various provisions for cotton cloth containing various specified numbers of threads to the square inch.

"321. Cotton table damask, * * * forty per centum ad valorem."

"322. All manufactures of cotton not specially provided for in this act, forty-five per centum ad valorem."

The collector classified them under paragraph 322. The Board held that they were properly dutiable under one or other of paragraphs 304 to 308, while the importers contended that they were covered by paragraph 321. The language of paragraph 321 is more specific than that of the other paragraphs, and, if the term "cotton table damask" covers the importation, it is properly dutiable under that paragraph. In ordinary common speech, the phrase "cotton table damask" certainly includes completed articles for table use, as well as goods in the piece from which such articles are made. The Board, however, reached the conclusion—in which the judge who heard the cause at circuit concurred—that the trade meaning of the phrase was narrower and confined to cotton damask in the piece or cotton damask cloth.

We do not find it necessary to discuss the evidence upon which this conclusion is predicated, because a review of prior tariff legislation shows that Congress used this phrase in its denominative or common popular sense.

The tariff act of 1883 (22 Stat. p. 506, c. 121) provided (paragraph 325) for "cotton damask." While that act was in force, question was raised as to whether cotton damask tablecloths were covered by that paragraph. The appraiser at the port of New York reported that the "cotton damask" of commerce includes completed articles. Nevertheless the collector at that port and the Treasury Department held that such words should be held to include only cotton damask in the piece. T. D. 8,600, December 30, 1887.

It must be presumed that Congress was informed of that decision when it passed the tariff act of 1890 (26 Stat. p. 567, c. 1244), which provided (paragraph 355) for "cotton damask in the piece or otherwise." By the use of this phrase Congress plainly indicated that there was "cotton damask in the piece" and "cotton damask not in the piece." It repeated the same phrase in the tariff act of 1894 (paragraph 264, 28 Stat. p. 508, c. 348). We find it impossible to escape the conviction that the draftsman who inserted these words "cotton damask" understood and intended that they should stand for a group of articles which were divisible into two subgroups, viz., "cotton damask in the piece" and "cotton damask not in the piece;" and if that be their meaning they would, when used alone, cover both subgroups. In the next tariff act (the one now under consideration) we have the same phrase "cotton damask" qualified only by the word "table," which restricts it from covering cotton furniture damask and such like. When we find a phrase which Congress has in prior tariff acts used with one meaning, it is a sound principle of construction to assume that Congress intended to use it with the same meaning in the later act unless, indeed, there be something in the subsequent act which indicates some different intention. We find no such indication here, and therefore conclude that Congress intended to use the phrase "cotton table damask" with the same meaning which it has in ordinary speech, viz., as covering equally completed articles and goods in the piece.

The decision is reversed.