MURPHY & STEVENSON (INC.) *v.* UNITED STATES (No. 2553)[1]

CONSTRUCTION, PARAGRAPHS 1013 AND 1014, TARIFF ACT OF 1922—RELATIVE SPECIFICITY—"TABLE DAMASK \* \* \* OF VEGETABLE FIBER OTHER THAN COTTON, " AND "NAPKINS \* \* \* OF FLAX"—DAMASK LINEN TABLE NAPKINS IN THE PIECE.

The provision of paragraph 1014, Tariff Act of 1922, "Napkins \* \* \* of flax" is more specific than that of paragraph 1013 for "Table damask \* \* \* of vegetable fiber other than cotton." Damask linen table napkins in the piece are, therefore, dutiable under paragraph 1014, rather than under paragraph 1013.

United States Court of Customs Appeals, November 21, 1925

APPEAL from Board of United States General Appraisers, Abstract 48623

[Affirmed.]

*Comstock & Washburn (Geo. J. Puckhafer* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*Oscar Igstaedter,* special attorney, of counsel), for the United States.

---

[Oral argument Oct. 28, 1925, by Mr. Puckhafer and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise in controversy in this appeal was described in the answer to the protest as follows: "* * * napkins composed of flax not exceeding 120 threads to the square inch." It was returned for duty under paragraph 1014 of the Tariff Act of 1922 as napkins.

The napkins, from their appearance, are table napkins, although there is no proof in the record to that effect. It is admitted that they are of damask weave, woven in the piece and are not separated or cut.

The importers protested the classification of the merchandise under paragraph 1014 as napkins, and contended there, as they contend here, that they should be assessed at 40 per centum ad valorem under paragraph 1013, as "Table damask composed wholly or in chief value of vegetable fiber other than cotton."

The Board of General Appraisers overruled the protest of the importers for the reason, expressed in its opinion, that napkins composed wholly or in chief value of flax was more specific than table damask composed wholly or in chief value of vegetable fiber other than cotton.

The two competing paragraphs are as follows:

PAR. 1013. Table damask composed wholly or in chief value of vegetable fiber other than cotton, and manufactures composed wholly or in chief value of such damask, 40 per centum ad valorem.

PAR. 1014. Towels and napkins, finished or unfinished, composed wholly or in chief value of flax, hemp, or ramie, or of which these substances are, or any of them is, the component material of chief value, not exceeding one hundred and twenty threads to the square inch, counting the warp and filling, 55 per centum ad valorem; * * *

It is urged by the importers that paragraph 1013 is new legislation covering damask of vegetable fiber other than cotton, and that the history of the legislation compels classification of the merchandise at hand under this paragraph. It is further urged that while "napkins" in paragraph 1014 is an eo nomine provision, "table damask" in paragraph 1013 is also an eo nomine provision, and that table damask is a more limited designation than napkins since the latter may be used for uses other than that of the table.

Relying on certain decisions of this and other courts, it is argued at great length and with much plausibility by the learned counsel for the importers that, regardless of the fact as to whether table damask is eo nomine or not, relative specificity will not be permitted to control as against the intent of Congress, if otherwise indicated, the eo nomine rule being one adopted only for the purpose of arriving at the legislative intent.

Counsel for the importers have cited the following cases which it is contended control the decision in this case: *Rosenberg & Co.* v. *United States,* 7 Ct. Cust. Appls. 213; *Sargent Co.* v. *United States,* 4 Ct. Cust. Appls. 462; *Comstock & Theakston* v. *United States,* 12 Ct. Cust. Appls. 502.

The question here presented is a close one, and the analogies that may be drawn from the facts in this case and the facts involved in the three cases cited, are quite interesting and it must be admitted in some respects, seem to challenge the correctness of the court's views as to the case at bar. We think, however, the three cases referred to are not controlling and may be distinguished without narrowing or unduly limiting the full scope which they were intended to cover.

At the outset, it is conceded that if either of the above paragraphs stood alone the merchandise involved could properly fall within it.

We are, however, in agreement with the court below that "napkins of flax" is a more specific term than "table damask of vegetable fiber other than cotton," and we see nothing in the legislative history of the paragraphs involved or other facts connected with their enactment, which prevents the full force of the rule of relative specificity applying here. We are not insensible to the force of the statement that paragraph 1013, on table damask, is new legislation, and that Congress intended a different classification from that which had heretofore prevailed. This consideration, in our judgment, might be sufficient to overcome the difference in specificity were it not for the fact that paragraph 1014 also is new legislation. It seems to us, therefore, the only question involved here is as to which of the paragraphs is the more specific. Paragraph 1013 is specific to the extent that it only includes table damask, where napkins might well be napkins other than those for table use. But, however, in the instance at hand, they are table napkins as the sample clearly indicates. Moreover, they are accompanied by an illustrative exhibit consisting of damask table cloth, in the piece, substantially similar in all respects other than size.

While "napkins" may not be quite as specific as "table napkins" the word "napkins" is so closely associated with table use that, for purposes of this kind, we can see no great difference between the paragraph as it now stands and the paragraph if it had contained the words "table napkins."

It will be noted that paragraph 1013 contains the provision, "composed wholly or in chief value of vegetable fiber other than cotton," while paragraph 1014 speaks of napkins "composed wholly or in chief value of flax, hemp, or ramie." There are many kinds of vegetable fiber other than cotton and other than flax, hemp, and ramie. The part of paragraph 1014 applicable to the merchandise at hand is limited to towels and napkins not exceeding 120 threads

to the square inch, while paragraph 1013 has no thread qualification. It seems to us, in weighing the arguments for relative specificity the most controlling one is that napkins is more specific than table damask, because if we regard a napkin as an article for table use, we are considering only one article, while "table damask" might include table cloths, napkins, doilies, and probably luncheon cloths and possibly other cloth table articles. The situation might be compared to a paragraph providing for men's footwear as compared with a paragraph for men's shoes.

In Rosenberg & Co., supra, which involved a very close point for decision, this court held, chiefly on the grounds of legislative history, that a paragraph for coat linings would fall in competition with a paragraph for cloth and all manufactures of every description made by any process, wholly or in chief value of the hair of the Angora goat. There, the legislative history of the case was so compelling that the court announced the following well-settled rule:

> While it is true, as urged by the importers, that the doctrine that an *eo nomine* description takes precedence over a general one is well established, yet that rule is one of construction only and has been adopted and recognized for the purpose of ascertaining the legislative intent. This rule, however, must be taken with the qualification that if Congress has indicated in a given case its intent that such a rule is not to apply it can not in such case be successfully invoked. *Cohn* v. *United States*, 4 Ct. Cust. Appls. 378; T. D. 33536.

In that case the legislative history, as well as the wording of the paragraphs, abundantly warranted the application of the rule.

In Sargent Co., supra, the competing paragraphs were:

> 94. * * * porcelain * * * ware, plain white, * * * fifty-five per centum ad valorem.
> 92. * *. * earthenware * * * crucibles, * * * twenty-five per cen-tum ad valorem: * * *

This court held that Congress did not intend that porcelain crucibles should be taken out of paragraph 94, which provided for "porcelain * * * ware, plain white," and that the porcelain paragraph was intended by Congress to include porcelain crucibles, notwithstanding the eo nomine designation in the earthenware crucible paragraph. At the close of the opinion, the court, through Judge Barber, stated: "If, commercially speaking, these porcelain crucibles are earthenware, the burden is upon the importer to establish that fact." It would seem that there was no proof that the crucibles were earthenware, but that it was shown that they were plain white porcelain. We do not think this statement of facts puts the case on all fours with the case at bar.

In Comstock case, supra, this court had under consideration the following two paragraphs:

> PAR. 91. Titanium potassium oxalate, and all compounds and mixtures containing titanium, 30 per centum ad valorem.

PAR. 68. Pigments, colors, stains, and paints, including enamel paints, whether dry, mixed, or ground in or mixed with water, oil, or solutions other than oil, not specially provided for, 25 per centum ad valorem.

It was there urged by the importer, that the pigment paragraph should control, for the reason that it denoted use. This court held that pigment did "not connote use except in a very general way." The court also had in mind the fact that compounds and mixtures containing titanium were there for the first time singled out for special consideration, while pigments had long been the subject of legislation. The case at bar is different in so far as both competing paragraphs are essentially new.

The judgment of the Board of General Appraisers is *affirmed.*