ELMER T. MIDDLETON *v.* UNITED STATES (No. 4082)[1]

United States Court of Customs and Patent Appeals, October 25, 1937

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.

*Joseph R. Jackson* Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *William Whynman*, special attorney, of counsel), for the United States.

[Oral argument October 5, 1937, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

The appellant herein imported in 1934 at the port of New York certain table cloths of various sizes, in chief value of flax.

In their production the cloths are woven in running lengths. As the cloth is made a design is woven into it, the design extending along such length of the material as is necessary for a table cloth of the desired size. After the design is completed, an identical design is woven into the succeeding length of cloth; accordingly, the material as woven consists of a running length upon which are woven successive, identical designs, each design utilizing so much of the cloth

---

[1] T. D. 49205.

:as is necessary to produce a table cloth of the requisite size. Between adjacent designs is enough cloth to permit hemming of the edges when the cloth is severed; between the designs on the running length of cloth are marks to indicate the proper place to cut the successive designs from the running length. After cutting, each table cloth is of a uniform pattern, and the mere hemming of each end is all that is required to make a finished table cloth. The weave and pattern of the cloth is of that character commonly known as "table damask." The cloths were imported after having been cut apart, some of them hemmed and the others not hemmed.

The merchandise was classified under paragraph 1013 of the Tariff Act of 1930 and assessed with duty at the rate of 45 per centum ad valorem.

Appellant duly filed a protest against such classification and assessment of duty, claiming the merchandise dutiable under paragraph 1023 of the same act at 40 per centum ad valorem.

The provisions of the two paragraphs read as follows: ·

PAR. 1013. Table damask, wholly or in chief value of vegetable fiber, except cotton, and all articles, finished or unfinished, made or cut from such damask, 45 per centum ad valorem.

PAR. 1023. All manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for, 40 per centum ad valorem.

At the conclusion of the hearing before the Customs Court the following stipulation was entered into:

Mr. WHYNMAN. If the court please, in addition to that appearing on the record, both on direct and cross (examination), counsel for the respective parties stipulate as follows: That the common understanding of the term "table damask," standing alone and without any qualifications, includes Exhibit 1 in this case, which is the cloth, and Illustrative Exhibit B in this case, which is the yardage goods; and in fact includes all the exhibits before the court, and we might go a step further and agree that napkins would likewise be included in the term "table damask" if napkins were not specially provided for.

Mr. PLACE. That is agreed to.

*    *    *    *    *    *    *

Mr. WHYNMAN. It is further stipulated that Exhibit 1 in this case is committed to a tablecloth in the loom, and in fact before it went in the loom they designed it, it went in and it came out.

Mr. PLACE. As a tablecloth, 72 by 90.

Mr. WHYNMAN. Correct. Or whatever they may be, all identities have been fixed.

Mr. PLACE. And Exhibit 2 was primarily designed and constructed to be a tablecloth of dimensions 72 by 136.

Mr. WHYNMAN. And to be used——

Mr. PLACE. And to be used on the table in the service of a meal.

Mr. WHYNMAN. And Exhibit 1.

Mr. PLACE. And Exhibit 3 was primarily designed and specially constructed to be a table damask cloth to be used on the table in the service of a meal, and to be of a size 70 by 80 inches.

Mr. WHYNMAN. Right.

Mr. PLACE. And Exhibit 4 was primarily designed and particularly constructed to serve as a cloth on the table at mealtime, and to be of a size 54 by 54 inches.

Mr. WHYNMAN. Right.

Mr. PLACE. And Illustrative Exhibit A was primarily designed and particularly constructed to be used as napkins to be used by the diner at the table, napkins of 22-inch size, 22 by 22.

The Customs Court (Second Division) overruled the protest and entered judgment accordingly. From such judgment this appeal was taken.

There is but one issue before us, which was concisely stated by the Customs Court in its decision as follows:

The contention of the plaintiff is that as the separately cut pieces of table-cloths, or finished tablecloths by cutting and hemming, were woven in the piece as tablecloths, and not simply as fabrics, they are not properly included within the provision for "table damask," and that as complete tablecloths they can neither be regarded as "articles, finished or unfinished, made or cut from such damask."

If the merchandise is dutiable under said paragraph 1013, it must be held to be embraced within the first provision of the paragraph as "table damask," for, having been produced directly from the loom the table cloths were not made or cut from table damask. *Curtis & Von Bernuth Mfg. Co.* v. *United States*, 22 C. C. P. A. (Customs) 651, T. D. 47633; *Swedish Venetian Blinds Co.* v. *United States*, 24 C. C. P. A. (Customs) 20, T. D. 48291.

Appellant having stipulated that the involved merchandise is within the "common understanding of the term 'table damask,' standing alone and without any qualifications," the only question before us is the construction to be given to the term "table damask" as used in the first part of paragraph 1013, in view of the later provision in the paragraph for "all articles, finished or unfinished, made or cut from such damask."

The provision for table damask made of linen or vegetable fiber, other than cotton, first appeared in the Tariff Act of 1922, but the term "cotton table damask" appeared in the tariff act of 1897 (paragraph 321) and in every tariff law enacted thereafter.

In the tariff act of 1883, paragraph 325, there was a provision for "cotton damask." It was held by the Treasury Department that the term embraced piece goods or fabrics only, and that it did not cover such articles as table cloths.

In the tariff acts of 1890 and 1894 provision was made for "cotton damask, in the piece or otherwise." In the tariff act of 1897, paragraph 321, the qualification "in the piece or otherwise" was omitted, and provision was made for "cotton table damask" without qualification.

In the case of *Dunham & Co.* v. *United States*, 150 Fed. 562, it was held that the term "cotton table damask," as used in paragraph 321

of the tariff act of 1897, included completed articles for table use as well as goods in the piece.

This holding is in harmony with the stipulation in the case at bar, that the common understanding of the term "table damask," standing alone and without any qualification, includes damask table cloths.

In the tariff act of 1913, paragraph 263 provided for "Cotton table damask, and manufactures of cotton table damask, or of which cotton table damask is the component material of chief value."

Paragraph 1013 of the Tariff Act of 1922 provided for "Table damask composed wholly or in chief value of vegetable fiber other than cotton, and manufactures wholly or in chief value of such damask."

The question before us for decision is whether the use of the language "and all articles, finished or unfinished, made or cut from such damask" narrows or restricts the meaning of the term "table damask" used in the first part of the paragraph to table damask in the piece. It is conceded that the articles here involved were not "made or cut" from table damask, being produced directly from the loom. Therefore, unless they are embraced in the general term "table damask" used in the first part of paragraph 1013, the judgment of the Customs Court should be reversed.

Appellant contends that in the enactment of paragraph 1013 Congress intended that the term "table damask," as used in the first part of the paragraph should include only the fabric in the piece, and should not include such articles as are here involved, or articles made or cut from table damask; that if articles made or cut from table damask are embraced in the term "table damask" as used in the first part of paragraph 1013, then the specific provision for such articles would be surplusage. He therefore invokes the rule that a change of language ordinarily denotes a change of intent.

In order to sustain appellant's contention, we would be compelled to take judicial notice that no articles are made from table damask that would not be included within the common meaning of the term "table damask." This we cannot do, for if it be a fact we do not think that it is a matter of common knowledge. It has been judicially determined that the term "table damask," standing alone, in common understanding includes completed articles for table use, as well as goods in the piece. Such also is the effect of the stipulation in the case at bar.

It must be true that if an article is made or cut from table damask, but that article is not for table use, it would be dutiable solely by virtue of the second provision of paragraph 1013, *supra*. Therefore we cannot say upon the record before us that the provision for articles made or cut from table damask would be surplusage if the articles such as are here involved shall be held to be embraced in the general

term "table damask" used in the first part of the paragraph. So far as the record before us is concerned, there may be a field for the operation of the second part of paragraph 1013, even though table articles of damask are embraced within the first part of the paragraph.

In view of the foregoing, we deem it unnecessary to consider what conclusion should be reached if it had been shown that all articles made or cut from table damask are in fact articles used upon the table.

We think the Customs Court came to the right conclusion as to the construction of paragraph 1013, *supra*, upon the record before it, and its judgment is *affirmed*.