(C. D. 103)

ELMER T. MIDDLETON *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 20, 1939)

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: This is a suit against the United States, arising at the port of New York, brought to collect certain customs duties alleged to have been improperly exacted on a certain importation of tablecloths. Duty was levied thereon at the rate of 45 per centum ad valorem under the provisions of paragraph 1013 of the Tariff Act of 1930, which reads as follows:

PAR. 1013. Table damask, wholly or in chief value of vegetable fiber, except cotton, and all articles, finished or unfinished, made or cut from such damask, 45 per centum ad valorem.

It is claimed by plaintiff that they are properly dutiable at but 40 per centum ad valorem under the provisions of paragraph 1023 of said act, which reads as follows:

PAR. 1023. All manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for, 40 per centum ad valorem.

The tablecloths in question are 45 inches square, in chief value of flax, and from an examination of the sample, which was admitted in evidence as Illustrative Exhibit 1, it appears that they are of the type

which is ordinarily used for the service of meals. Their identity as tablecloths is fixed on the loom. They are woven as separate articles in the piece, approximately thirty-eight in one length, or in one setting of the loom, and are produced by a peculiar twill weave characteristic of damask construction, which all of the witnesses who testified herein recognized as table damask. The repeat designs in the piece are separated by a mark produced by the Jacquard machine, a so-called "cutting check," to indicate where the individual tablecloths are to be cut. As imported, the tablecloths were cut apart from the length in which they were woven.

There was also admitted in evidence as Exhibit 2 a sample of fabric material, which was also recognized by all of the plaintiff's and defendant's witnesses as table damask, from which articles of various sizes may be made or cut. It was testified that such merchandise is woven in lengths ranging from forty to forty-five yards and in various widths; and that said Exhibit 2 is seventy inches wide.

The issue presented herein is not a new one. The latest expression on the subject was made by our appellate court in the case of *Middleton* v. *United States*, 25 C. C. P. A. 155, T. D. 49265, which affirmed this court's decision in the matter of *Middleton* v. *United States*, T. D. 48799. Previously, the same question was before us in the case of *Hale Bros. Stores, Inc.* v. *United States*, Abstract 27591. In affirming the assessment made by the collector in each of those cases, and holding that the merchandise was properly dutiable as "table damask" under paragraph 1013, *supra*, both this court and the appellate court adhered to the judicial principle enunciated in the case of *Dunham* v. *United States*, 150 Fed. 562, that the term "table damask" is used in its "denominative, or common, popular sense, which includes completed articles as well as goods in the piece from which such articles are made."

The reason given for a retrial of the issue in the instant case is set forth by counsel for the plaintiff in his brief as follows:

The reason for presenting this issue again is to supply a defect or omission in the former record [the *Middleton* case, *supra*]. The Appellate Court in its opinion stated:

It must be true that if an article is made or cut from table damask, but that article is not for table use, it would be dutiable solely by virtue of the second provision of paragraph 1013, *supra*. Therefore we cannot say upon the record before us that the provision for articles made or cut from table damask would be surplusage if the articles such as are here involved shall be held to be embraced in the general term "table damask" used in the first part of the paragraph. So far as the record before us is concerned, there may be a field for the operation of the second part of paragraph 1013, even though table articles of damask are embraced within the first part of the paragraph

We make no attempt to place a construction on the above-quoted language used by our appellate court in the *Middleton* case, *supra*, but we are deciding *only* the issues presented herein by counsel for the

plaintiff to determine the proper tariff classification of the tablecloths covered by the protest before us.

It is contended by plaintiff, as we understand it, that if he can establish as a fact that the use of articles made or cut from table damask is exclusively for table use, or for use in the service of meals, that *ipso facto* the provision in paragraph 1013 of the Tariff Act of 1930 for "all articles, finished or unfinished, made or cut from such damask" is redundant, if we continue to follow the judicial construction placed on the term "table damask," to wit: that it embraces not only the fabric in the piece, but also completed articles, such as tablecloths of damask weave woven as separate entities. Plaintiff further contends that since the separately cut pieces of tablecloths were woven in the piece as tablecloths, and not simply as fabrics, they are not properly included within the provision for "table damask", and that as complete tablecloths they can neither be regarded as "articles, finished or unfinished, made or cut from such damask."

Seven witnesses, all of whom had had years of experience in the trade dealing with table damask made from flax yarns, testified in this case concerning the use of articles made or cut from table damask. Four of such witnesses appeared on behalf of the plaintiff, and three on behalf of the defendant. Except for a single statement by two of the plaintiff's witnesses that they had seen table damask used on communion tables in churches, all of said witnesses stated that they knew of no other use for articles made or cut from table damask than for table use, or for use in the service of meals. The testimony concerning the use of table damask on communion tables is unconvincing. It indicates such use to be a minor or incidental one, to such an extent that we regard it as negligible.

Nor do the two so-called sample books offered by counsel for the defendant, and which were received in evidence as Illustrative Exhibit A and Illustrative Exhibit E, establish any different fact. Counsel for defendant contends that the pieces of table damask contained in said illustrative exhibits represent articles made or cut from table damask, and argues in his brief that since Illustrative Exhibit E was the subject of the decision by the United States Court of Customs Appeals in the matter of *United States* v. *Field*, 14 Ct. Cust. Appls. 404, T. D. 42051, wherein it was held dutiable under the provisions of paragraph 1013 of the Tariff Act of 1922, which read as follows:

PAR. 1013. Table damask composed wholly or in chief value of vegetable fiber other than cotton, and manufactures composed wholly or in chief value of such damask, 40 per centum ad valorem.

that there has been a judicial pronouncement that there are "manufactures of table damask which are not used on the table during the service of meals." In the *Field* case, *supra*, the question involved was whether the pieces of damask imported in a form simulating a

book were properly dutiable under the provision for "books" in paragraph 1310 of the act of 1922. In excluding them as "books" from the provisions of said paragraph 1310, the appellate court did not hold that the said pieces of damask were manufactures of damask, but merely stated that they were table damask and properly dutiable under the provisions of paragraph 1013 of the Tariff Act of 1922. Two witnesses for the defendant and one of the plaintiff's witnesses testified that the swatches or pieces of table damask included in said Illustrative Exhibit A and Illustrative Exhibit E had no commercial value and were incapable of serving any utilitarian purpose, and that their only use was as a display to prospective customers or buyers to show different qualities and patterns offered by salesmen or manufacturers. Certainly we are not prepared to hold, nor do we believe Congress so intended, that small pieces of table damask which have no commercial value and which are unfit for any use except as samples for salesmen in displaying their line of merchandise, and which may be put up in bound-book fashion for convenience in handling and carrying, are *articles made or cut from table damask*, as contemplated by paragraph 1013 of the Tariff Act of 1930.

Although the evidence before us is fairly conclusive that there is no other use for articles made or cut from table damask than for table use or for use in the service of meals, such proof, in our judgment, is not necessarily determinative of the proper tariff classification of the instant merchandise.

It must be borne in mind that the merchandise under consideration consists of tablecloths in chief value of flax and of a peculiar damask weave, which all of the witnesses identified as table damask; and that these tablecloths were woven as separate articles on the loom.

As early as 1906 the United States Circuit Court of Appeals in the *Dunham* case, *supra*, held that the term "cotton table damask" was used in its denominative or common popular sense, which includes material in the piece or in the form of completed articles of cotton table damask. In said case the court also stated that the word "table" differentiated the provision from damask for furniture and the like. Later, and in the case of *Dezell & Helwig et al.* v. *United States*, G. A. 7457, T. D. 33387, which arose under the Tariff Act of 1909, a further and more specific construction was placed on the said term. In that case, the court held that the provision for "cotton table damask" pertained to "such merchandise as is suitable for use as tablecloths, napkins, doilies, etc., and is usually and ordinarily used during the service of meals." In the case of *Murphy & Stevenson* v. *United States*, 13 Ct. Cust. Appls. 291, T. D. 41217, which arose under the Tariff Act of 1922, the court held linen damask napkins to be more specifically provided for under the provision for "Napkins * * * of flax" in paragraph 1014 of said act, than under the provision in paragraph 1013 of said act for "Table damask * * *

of vegetable fiber other than cotton." In the case of *Lang Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 341, T. D. 42495, a tablecloth and six napkins imported as a set and assessed with duty as entireties under the Tariff Act of 1922 were held to be properly dutiable separately; the napkins under the *eo nomine* provision therefor in paragraph 1014 of said act, and the tablecloth as a manufacture of table damask under paragraph 1013 of said act.

So far as we are aware none of the principles enunciated in said decisions has been changed or modified by judicial ruling or legislative action; therefore they still govern the rules of construction in the present case.

In view of the tariff history of the term "table damask" as hereinabove outlined and as reviewed in our decisions in the *Middleton* case, *supra*, and in the *Hale Bros. Stores* case, *supra*, the argument urged by counsel for plaintiff in their brief that these tablecloths are articles as distinguished from mere fabric material has no application to the issue involved herein. This proposition was discussed in our decision in *Middleton* v. *United States*, T. D. 48799, to which we particularly invite attention.

Equally untenable, in our judgment, is the contention of plaintiff that by the provision for "all articles, finished or unfinished, made or cut from such damask" in paragraph 1013 of the Tariff Act of 1930, the term "table damask" has been qualified, thus rendering inapplicable the principle laid down in the *Dunham* case, *supra*. The said term as it appears in said paragraph 1013 stands alone. If the word "fabric" were used with said term so that the expression in the paragraph would be "table damask fabric" then the construction sought by plaintiff might prevail. However, there are no qualifying words accompanying the said term, and in view of the long line of decisions on the subject which have consistently held that the term "table damask" standing alone and unqualified includes finished or completed articles as well as the fabric material in the piece, there is no basis for the conclusion urged by plaintiff.

But whatever may be the application or the operation of the provision for "all articles finished or unfinished, made or cut from such damask" in the second part of said paragraph 1013, we are decidedly of the opinion it was never intended to limit the scope of the provision in the first part thereof for "table damask," so as to exclude therefrom tablecloths of the type involved herein. What we said on this point in our decision in the case of *Middleton* v. *United States*, T. D. 48799, is worthy of repetition here. In that case, we stated:

Counsel for plaintiff argue in their brief that if the expression "table damask" was used by Congress to include finished articles as well as piece goods, the provision for "all articles, finished or unfinished, made or cut from such damask" would be pure redundance. In our opinion the tablecloths now under consideration would undoubtedly be classifiable under said paragraph 1013, as table damask

even in the absence of the further provision for "all articles * * * made or cut from such damask." This latter provision, however, does not seem to create a redundancy, for the reason that it still seems to have a proper field of operation when the whole of said paragraph 1013 is analyzed. For instance, table damask as judicially interpreted covers (1) table damask fabric material in the piece; (2) separately woven articles of table damask, such as tablecloths, napkins, and doilies; and (3) articles made or cut from table damask cloth or fabric. Even were said provision "and all articles * * * made or cut from such damask" to be considered as redundant or surplusage, which Congress might have added out of an abundance of precaution, it certainly is no evidence that Congress intended to give the term "table damask" a restricted meaning in the Tariff Act of 1930, so as to exclude from said paragraph 1013 *separately woven articles* of damask weave for use in the service of meals, or such articles woven in the piece and remaining only to be cut apart and hemmed. [Italics ours.]

If articles, finished or unfinished, made or cut from table damask in chief value of vegetable fiber, other than cotton, have no other use than for table use or for use in the service of meals—and the record before us fairly establishes it to be so—such fact, in our judgment, forms absolutely no legal basis that would warrant or justify this court, in the light of the authorities cited in this opinion, to relegate, for tariff classification, merchandise of the type involved herein, to paragraph 1023 of the Tariff Act of 1930, as claimed by plaintiff.

Following the principles enunciated in the decisions cited herein, we overrule the protest and affirm the classification of the collector. Judgment will be rendered accordingly.