214

ELMER T. MIDDLETON *v.* UNITED STATES (No. 4247)[1]

[1] C. A. D. 148.

United States Court of Customs and Patent Appeals, October 28, 1940

*Brooks & Brooks* (*Ernest F. A. Place* and *Frederick W. Brooks, Jr.*, of counsel), for appellant.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, Special Attorney, of counsel), for the United States.

[Oral argument October 1, 1940, by Mr. Frederick W. Brooks, Jr. and Mr. FitzGibbon]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal brings before us for review a judgment of the United States Customs Court, Second Division, holding certain tablecloths to be properly dutiable, as classified, under paragraph 1013 of the Tariff Act of 1930 at 45 per centum ad valorem as table damask.

The merchandise was entered at the port of New York in 1933 and is described in the decision of the Customs Court as follows:

The tablecloths in question are 45 inches square, in chief value of flax, and from an examination of the sample, which was admitted in evidence as Illustrative Exhibit 1, it appears that they are of the type which is ordinarily used for the service of meals. Their identity as tablecloths is fixed on the loom. They are woven as separate articles in the piece, approximately thirty-eight in one length, or in one setting of the loom, and are produced by a peculiar twill weave characteristic of damask construction, which all of the witnesses who testified herein recognized as table damask. The repeat designs in the piece are separated by a mark produced by the Jacquard machine, a so-called "cutting check," to indicate where the individual tablecloths are to be cut. As imported, the tablecloths were cut apart from the length in which they were woven.

There was also admitted in evidence as Exhibit 2 a sample of fabric material, which was also recognized by all of the plaintiff's and defendant's witnesses as table damask, from which articles of various sizes may be made or cut. It was testified that such merchandise is woven in lengths ranging from forty to forty-five yards and in various widths; and that said Exhibit 2 is seventy inches wide.

Appellant filed a protest against said classification and assessment with duty, claiming the merchandise to be dutiable at 40 per centum ad valorem under paragraph 1023 of said tariff act. Other claims were made in the protest which were abandoned on the trial.

The provisions of said tariff act here involved read as follows:

PAR. 1013. Table damask, wholly or in chief value of vegetable fiber, except cotton, and all articles, finished or unfinished, made or cut from such damask, 45 per centum ad valorem.

PAR. 1023. All manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for, 40 per centum ad valorem.

The issue here presented is concisely stated in appellant's brief as follows:

The appellant claims that the merchandise does not consist of articles made or cut from table damask, and that the provision for "table damask," in paragraph 1013, covers fabrics in the piece, in contrast with the accompanying provision for "all articles, finished or unfinished, made or cut from such damask, * * *."

The expression "table damask," standing alone and without qualification, is a generic expression which is broad enough to include goods in the piece and articles, finished or unfinished, such as tablecloths, napkins, doilies, and tray cloths. The appellant contends that if the expression were used, in paragraph 1013, with such inclusive significance the accompanying provision for "articles * * * made or cut from such damask" would be surplusage.

This same contention was made before us in the case of *Middleton v. United States*, 25 C. C. P. A. (Customs) 155, T. D. 49265, where merchandise similar to that here involved was claimed to be dutiable under paragraph 1023. In that case, however, we did not find it necessary to pass upon the precise issue here presented because the record in that case did not establish that all articles made or cut from table damask are in fact articles used upon the table. In our opinion in that case we stated:

The question before us for decision is whether the use of the language "and all articles, finished or unfinished, made or cut from such damask" narrows or restricts the meaning of the term "table damask" used in the first part of the paragraph to table damask in the piece. It is conceded that the articles here involved were not "made or cut" from table damask, being produced directly from the loom. Therefore, unless they are embraced in the general term "table damask" used in the first part of paragraph 1013, the judgment of the Customs Court should be reversed.

Appellant contends that in the enactment of paragraph 1013 Congress intended that the term "table damask," as used in the first part of the paragraph should include only the fabric in the piece, and should not include such articles as are here involved, or articles made or cut from table damask; that if articles made or cut from table damask are embraced in the term "table damask" as used in the first part of paragraph 1013, then the specific provision for such articles would be surplusage. He therefore invokes the rule that a change of language ordinarily denotes a change of intent.

In order to sustain appellant's contention, we would be compelled to take judicial notice that no articles are made from table damask that would not be included within the common meaning of the term "table damask." This we cannot do, for if it be a fact we do not think that it is a matter of common knowledge. It has been judicially determined that the term "table damask," standing alone, in common understanding includes completed articles for table use, as well as goods in the piece. Such also is the effect of the stipulation in the case at bar.

It must be true that if an article is made or cut from table damask, but that article is not for table use, it would be dutiable solely by virtue of the second provision of paragraph 1013, *supra*. Therefore we cannot say upon the record before us that the provision for articles made or cut from table damask would be surplusage if the articles such as are here involved shall be held to be embraced in the general term "table damask" used in the first part of the paragraph. So far as the record before us is concerned, there may be a field for the operation of the second part of paragraph 1013, even though table articles of damask are embraced within the first part of the paragraph.

In view of the foregoing, we deem it unnecessary to consider what conclusion should be reached if it had been shown that all articles made or cut from table damask are in fact articles used upon the table.

The case before us differs from the case last above-cited in that appellant here contends that the evidence establishes conclusively that articles made or cut from table damask have no use other than table use, or use in the service of meals. The trial court held that this is fairly established by the evidence, and we are in agreement with that holding.

It is therefore necessary here to decide the question reserved by us in the cited case, viz, whether the phrase in paragraph 1013—"and all articles, finished or unfinished, made or cut from such damask"— should be held to restrict the common meaning of the term "table damask," as used in the first provision of said paragraph, to table damask in the form of woven cloth.

In our opinion in the case last above-cited, we reviewed to some extent the provisions of prior tariff acts relating to table damask. We there stated:

The provision for table damask made of linen or vegetable fiber, other than cotton, first appeared in the Tariff Act of 1922, but the term "cotton table damask" appeared in the tariff act of 1897 (paragraph 321) and in every tariff law enacted thereafter.

In the tariff act of 1883, paragraph 325, there was a provision for "cotton damask." It was held by the Treasury Department that the term embraced piece goods or fabrics only, and that it did not cover such articles as table cloths.

In the tariff acts of 1890 and 1894 provision was made for "cotton damask, in the piece or otherwise." In the tariff act of 1897, paragraph 321, the qualification "in the piece or otherwise" was omitted, and provision was made for "cotton table damask" without qualification.

In the case of *Dunham & Co.* v. *United States*, 150 Fed. 562, it was held that the term "cotton table damask," as used in paragraph 321 of the tariff act of 1897, included completed articles for table use as well as goods in the piece.

This holding is in harmony with the stipulation in the case at bar, that the common understanding of the term "table damask," standing alone and without any qualification, includes damask table cloths.

Paragraph 331 of the Tariff Act of 1909 read as follows:

331. Cotton table damask, forty per centum ad valorem; manufactures of cotton table damask or of which cotton table damask is the component material of chief value, not specially provided for in this section, forty per centum ad valorem.

In the "Notes on Tariff Revision" (1909), prepared for the use of the Committee on Ways and Means, House of Representatives, pp. 416, 417, after quoting paragraph 321 of the tariff act of 1897, we find the following:

Decisions and Interpretations.—In Dunham v. United States (150 Fed. Rep., 560; T. D. 27805, December 27, 1906) it was settled after long litigation that the expression "cotton table damask" was used herein in its denominative or common

and popular sense, and that it includes completed articles of table damask, such as table covers, napkins, etc., as well as table damask in the piece.

In the case of *Dezell & Helwig et al.* v. *United States*, T. D. 33387, 24 Treas. Dec. 619, the Board of General Appraisers (now the United States Customs Court) had occasion to consider said paragraph 331 of the Tariff Act of 1909. The merchandise there involved was table covers, made from a jacquard-figured cotton material of different colors. After reviewing the case of *Dunham & Co.* v. *United States, supra,* the board stated:

In the act of 1909, Congress enlarged paragraph 321 of the previous tariff by the addition of "manufactures of cotton table damask or of which cotton table damask is the component material of chief value, not specially provided for in this section." *We think this extra provision was added as an indorsement of the views of the court in Dunham v. United States, supra,* and not for the purpose of making the provision for "cotton table damask" broader than it was there held. [Italics ours.]

\*        \*        \*        \*        \*        \*        \*

In view of the decisions under prior tariff acts and from our understanding of the common meaning of the term "cotton table damask," we are of opinion that Congress intended to limit the cotton table damask and the articles made from cotton table damask, provided for in paragraph 331, to such merchandise as is suitable for use as table-cloths, napkins, doilies, etc., and is usually and ordinarily used during the service of meals. It is clear from an inspection of the articles before us that they are not suitable for such use, and we accordingly overrule the protests.

Paragraph 263 of the Tariff Act of 1913 provided for "Cotton table damask, and manufactures of cotton table damask, or of which cotton table damask is the component material of chief value."

Paragraph 911 of the Tariff Act of 1922 provided for:

PAR. 911. Table damask, composed wholly or in chief value of cotton, and manufactures, in any form, composed wholly or in chief value of such damask, 30 per centum ad valorem.

Paragraph 1013 of that act read as follows:

PAR. 1013. Table damask composed wholly or in chief value of vegetable fiber other than cotton, and manufactures composed wholly or in chief value of such damask, 40 per centum ad valorem.

Here for the first time Congress specifically provided for table damask composed of vegetable fiber other than cotton. The paragraph differed from paragraph 911, above quoted, in that the phrase "in any form," found in said paragraph 911, is not found in paragraph 1013.

The Summary of Tariff Information, 1920 (p. 420), contains the following:

GENERAL INFORMATION

Description and uses.—*Damask fabrics* are mainly woven on Jacquard looms, some varieties on dobby looms, and show ornamental patterns, elaborate in character, such as fruit, foliage, scrolls, and vases. The figures in the patterns are made by alternately exchanging warp for filling surface and vice versa. The

surface threads of the figures lie at right angles to the surface threads of the background, and rays of light falling on the fabric are dispersed and the pattern is brought out in bold relief, even though the entire fabric is of only one color. *Cotton table damask* refers to the woven cloth; the principal manufactures are table covers, napkins, and doilies. * * *

\*      \*      \*      \*      \*      \*      \*

### Interpretation and Comments

The term "cotton table damask" includes completed articles as well as goods in the piece and is more specific than the provisions for cotton cloth. (150 Fed. 562, of 1906.) * * *

The Summary of Tariff Information, 1921, issued while the bill which later became the Tariff Act of 1922 was pending in the Senate, contains (p. 876) the following:

Cotton table damask refers to the woven cloth; the principal manufactures are table cloths, napkins, and doilies.

There is also found the following (p. 877):

* * * The Tariff Commission is unable to find any reason for the eo nomine designation of this cloth at a distinct rate of duty, particularly as the progressive rates of duty levied on other countable cotton cloths under paragraph 903 cover many Jacquard fabrics of much finer yarns and higher percentage of labor cost. Specific mention of manufactures of cotton table damask might be continued for purposes of statistical record.

It is therefore suggested that paragraph 910 be reworded "Manufactures of cotton table damask, in any form, composed wholly or in chief value of cotton," with the intent that cotton table damask in the piece fall under the progressive rates of duty in paragraph 903 without specific mention.

This suggestion was not adopted, and paragraphs 911 and 1013 were enacted as above set out.

It will be observed that in the Tariff Act of 1930 paragraph 1013 does not follow the wording of paragraph 1013 of the Tariff Act of 1922, in that the provision for "manufactures * * * of such damask" was omitted, and there was substituted therefor the provision "and all articles, finished or unfinished, made or cut from such damask." A like change was made in paragraph 910 of the Tariff Act of 1930 relative to cotton table damask.

We have made careful search of the hearings, reports of committees, and proceedings in Congress to ascertain the reason for this change in language, and find nothing with respect thereto. The bill which later became the Tariff Act of 1930, as originally introduced in the House of Representatives contained the identical language now found in paragraph 1013 of said tariff act.

While it is true that a change in language in a statute ordinarily indicates a change of legislative intent, there are limitations to this rule.

It is well established that the master rule of construction, in the construction of all statutes, is so to interpret them as to carry out the

legislative intent, and any rule of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule. *United States* v. *Sticht & Co.*, 22 C. C. P. A. (Customs) 40, T. D. 47048.

In ascertaining this legislative intent with respect to the construction to be given paragraph 1013 we are first confronted with the proposition that it does not seem that Congress could possibly have intended that table damask of linen, if imported in the piece, should pay a duty of 45 per centum ad valorem, but if imported in the form of finished tablecloths, such as are before us, should pay a duty of only 40 per centum.

It is true that such anomalies sometimes occur in tariff legislation, and if they are clearly created by legislative action the courts have no power to correct them. *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T. D. 40226. However they are generally looked upon as contrary to the legislative intent, and if possible, statutes should be so construed as to avoid them. *United States* v. *Lehman Co., Inc.*, 22 C. C. P. A. (Customs) 106, T. D. 47081.

Finding as we must that, since the decision in the case of *Dunham & Co.* v. *United States, supra,* the term "table damask" according to its common meaning includes completed articles for table use, as well as goods in the piece, we must inquire whether Congress intended, by the language in paragraph 1013, to exclude from the paragraph articles woven on the loom of the exact character of table damask of linen woven and imported as cloth.

We think light upon this subject is afforded by considering paragraph 331 of the Tariff Act of 1909 where, for the first time, there was added to the provision for cotton table damask, without qualification, found in paragraph 321 of the Tariff Act of 1897, the words "manufactures of cotton table damask." As hereinbefore stated, in the case of *Dezell & Helwig* v. *United States, supra,* the construction of said paragraph 331 was considered by the Board of General Appraisers, and it was there held that the words "manufactures of cotton table damask," etc. were added merely as an indorsement of the views of the court in *Dunham & Co.* v. *United States, supra,* and that articles coming within the provisions of that paragraph were limited to those "suitable for use as table cloths, napkins, doilies, etc." The effect of this decision was that the addition of the phrase "manufactures of cotton table damask * * *" neither enlarged nor restricted the meaning of the term "cotton table damask" as used in the first part of the paragraph. In other words, the holding was that, even if articles were made from cotton table damask, they would not be within the purview of the paragraph unless such articles were for table use, such as tablecloths, napkins, doilies, etc.

As hereinbefore set out, the provisions for table damask in all

tariff acts between the Tariff Act of 1909 and that of 1930 included table damask and manufactures of the same, the latter provision, according to the decision last above-cited, meaning no more than if the provision had been for "table damask" without qualification.

Presumably Congress was aware of this decision, and probably by reason thereof the change in language was made in paragraph 1013 of the Tariff Act of 1930. If Congress was of the opinion that there were, or in the future might be, manufactures of table damask not for table use, and desired to include them in paragraph 1013, this object was clearly accomplished by the language "and all articles, finished or unfinished, made or cut from such damask."

In the case of *Middleton* v. *United States, supra,* we stated that we could not take judicial notice that no articles are made from table damask that would not be included within the common meaning of the term "table damask" because, if this was a fact, it was not a matter of common knowledge. The same observation applies to Congress, and if its purpose in employing the new language in paragraph 1013 was to cover articles made from table damask, either being produced at the time of the passage of the act or which might be produced thereafter, which would not be included in the common meaning of the term "table damask," the decision here appealed from should be affirmed, and it is immaterial whether any such articles were in fact being produced at the time of the passage of the Tariff Act of 1930.

In view of the fact that it is unreasonable to suppose that Congress intended that linen tablecloths, woven upon the loom, should bear a less rate of duty than plain linen table damask cloth, and in view of the further fact that there is a rational reason for the employment of the new language in paragraph 1013, possibly extending, but certainly not limiting, its scope, we are of the opinion that said new language was not intended to eliminate from the paragraph such merchandise as is here involved.

Under this view no anomaly in tariff rates is created, and no injustice is done to importers. Full weight is given to the general rule that a change of language indicates a change in intent, and the mere fact that at the time of the passage of the act there were no articles being produced from table damask that were not suitable for table use should not be controlling. It is elementary that tariff statutes are made for the future as well as the present, and it may be that articles may hereafter be produced from table damask that would not be included within the common meaning of that term, which articles, except for the new language of paragraph 1013, would not be classifiable thereunder.

However this may be, we are confident that in the enactment of paragraph 1013 Congress did not intend to eliminate therefrom articles

that had previously been classifiable as "table damask, wholly or in chief value of vegetable fiber, except cotton."

Even if the new language in paragraph 1013 be regarded as surplusage, it does not necessarily follow that it should be held that Congress intended to eliminate from the paragraph such articles as are here involved. In the case of *Burr & Hardwick* v. *United States*, 9 Ct. Cust. Appls. 71, T. D. 37943, this court said:

> On the whole, we are of opinion that the importers' contention can not be sustained, because the merchandise here is precisely within the *eo nomine* provision of paragraph 358, the history and language of which make it clear that it was the intent of Congress that such as the merchandise here should be classified thereunder. And further, assuming but not conceding that the importers have established their contention that such an interpretation of paragraph 358 renders inoperative the provision for Jacquard figured manufactures of cotton, it should be held that Congress employed that language in paragraph 258 as a precautionary measure rather than as indicating an intention to defeat or invade the specific eo nomine provision of paragraph 358. * * *

With reference to the statements in the Summary of Tariff Information, 1920 and 1921, that "Cotton table damask refers to the woven cloth," we would observe that this is merely an expression of opinion of the Tariff Commission, at variance with the very decision cited by it (*Dunham & Co.* v. *United States, supra*), and therefore there is no presumption that Congress attached any weight to this statement.

In view of the foregoing we are of the opinion that the judgment appealed from should be, and it is, affirmed.